**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THE WEISER LAW FIRM, et al.**, | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 2:19-cv-2728-KSM** |
| **MICHAEL HARTLEIB**, | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                    **November 17, 2020**

Plaintiffs the Weiser Law Firm, P.C., ("the Firm") and Robert Weiser, Esquire, have sued Defendant Michael Hartleib, alleging that Hartleib, a former potential client of the Firm, has frequently (and improperly) inserted himself into litigations in which they were involved and has publicly disparaged and attacked Plaintiffs to others. (Doc. No. 1.)[1]  In their complaint, Plaintiffs asserted seven causes of action: abuse of process, defamation, intentional infliction of emotional distress ("IIED"), negligent misrepresentation, intentional interference with prospective contractual relations, and tortious interference with contract.  (*Id.*)  Hartleib, a resident of California, moved to dismiss all claims for lack of personal jurisdiction and for improper venue. (Doc. No. 9.)

On October 9, 2020, we granted Hartleib's motion in part, dismissing Counts I, V, VI, and VII (vexatious litigant order, negligent misrepresentation, intentional interference with prospective contractual relations, and tortious interference of contract) for lack of personal jurisdiction and

---

[1] Because we write only for the parties and set forth the relevant facts in our previous opinion (Doc. No. 35), we do not restate the facts here.

Count II (abuse of process) for improper venue.  (Doc. Nos. 35–36.)  However, we denied Hartleib's motion as to Plaintiffs' defamation and IIED claims (Counts III and IV), finding that we could exercise jurisdiction over Hartleib and that venue in the Eastern District was proper as to those claims.  (Doc. No. 35.)

On October 22, 2020, Hartleib filed a motion for reconsideration pursuant to Local Civil Rule 7.1(g), arguing that this Court wrongly decided that venue was proper in the Eastern District as to Plaintiffs' defamation claim.  (Doc. No. 37.)  Hartleib contends that this Court has made five errors of law or fact in holding that venue was proper:  (1) relying on emails to a Pittsburgh-based attorney; (2) mentioning a *Wall Street Journal* article because Plaintiffs did not allege it was defamatory and Hartleib did not publish it; (3) not explicitly connecting Plaintiffs' injuries to a publication in the Eastern District; (4) considering emails Hartleib sent to a Chester County Detective, Thomas Goggin, because they are absolutely privileged; and (5) considering any remaining categories as amounting to substantial events or omissions.  (*Id.*)

In response, Plaintiffs argue that Hartleib has not met the legal standard for reconsideration, and that the emails Hartleib sent to Detective Goggin are not absolutely privileged because they were not contained in regular pleadings nor were they ever filed in a court of competent jurisdiction; that viewing the facts in the light most favorable to Plaintiffs, the *Wall Street Journal* article supports Plaintiffs' defamation claim; and that the remaining events or omission are substantial and give rise to venue in the Eastern District.  (Doc. No. 39.)[2]

---

[2] We note that Hartleib does not challenge this Court's ruling that it may exercise specific personal jurisdiction over him.  Rather, Hartleib only challenges our holding that the Eastern District is a proper venue for Plaintiffs' defamation claim.  (*See* Doc. No. 37 at p. 4 ("Defendant, Michael Hartleib . . . has moved for reconsideration of the denial of his motion to dismiss Count III [of] Plaintiffs' Complaint for improper venue.").  But in their opposition, Plaintiffs appear confused and also discuss this Court's decision to exercise specific jurisdiction over Hartleib.  (*See* Doc. No. 39 at p. 7 ("Defendant's Motion seeks reconsideration of the Court's decision to exercise specific personal jurisdiction over him with respect to Count III of the Complaint"); *id.* at pp. 8–9 (discussing the *Calder* effects test, which courts

For the reasons discussed below, we deny Hartleib's motion for reconsideration.

## I.

"A timely motion for reconsideration under Local Rule 7.1(g) is considered analogous to a motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." *Kennedy Indus., Inc. v. Aparo*, Civil Action No. 04-5967, 2006 WL 1892685, at *1 (E.D. Pa. July 6, 2006).  "The purpose of a motion for reconsideration is to correct manifest errors of law or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "Out of consideration for finality and judicial economy," courts should grant motions for reconsideration "sparingly." *Hatcher v. SCM Grp. N. Am., Inc.*, 167 F. Supp. 3d 719, 728 (E.D. Pa. 2016) (citation omitted).

Before altering or amending a prior decision, courts in this Circuit require the moving party to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Here, Hartleib has taken the third route, and argues that the Court has committed clear errors of law or fact.

"Because of the courts' interest in the finality of judgments, motions for reconsideration should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and decided by the Court." *PBI Performance Prods., Inc. v. NorFab Corp.*, 514 F. Supp. 2d 732, 743–44 (E.D. Pa. 2007) (quotation marks and citation omitted); *see also Kennedy Indus.*, 2006 WL 1892685, at *1 (same); *Jarzyna v. Home Props., L.P.*, 185 F.

---

apply when considering whether they may assert specific jurisdiction over a defendant for intentional tort claims).  Because Hartleib only moves for reconsideration of this Court's ruling that venue is proper in the Eastern District for Plaintiffs' defamation claim, we do not consider Plaintiffs' jurisdictional arguments.

Supp. 3d 612, 622 (E.D. Pa. 2016) (explaining that motions for reconsideration "should not be grounded on a request that a court rethink a decision already made").  In other words, "motions for reconsideration may not be used to give a litigant a 'second bite of the apple.'"  *Id.* (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)); *Jarzyna*, 185 F. Supp. 3d at 622; *see also PBI Performance Prods.*, 514 F. Supp. 2d at 744 ("A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or to correct mistakes it made in its previous one.").  "Thus, a motion for reconsideration may address 'only factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through—rightly or wrongly.'"  *Jarzyna*, 185 F. Supp. 3d at 622 (citations omitted).

## II.

As we explained in our October 9, 2020 opinion (*see* Doc. No. 35 at p. 36), when deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), a court must accept all of the plaintiff's allegations as true, unless those allegations are contradicted by evidence proffered by the defendant.  *See, e.g.*, *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).  When challenging venue, the defendant bears the burden of showing that the venue is improper.  *Id.* at 160.

The parties agree that the only way venue is proper in the Eastern District is if 28 U.S.C. § 1391(a)(2) applies.  Under § 1391(a)(2), a plaintiff may bring a case in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  The Third Circuit has made clear that the "[t]he test" as to whether venue is proper under § 1391(a)(2) "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291,

294 (3d Cir. 1994).

Although we must find that a substantial part of the events or omissions giving rise to Plaintiffs' defamation claim occurred in the Eastern District for venue to be proper here, "Section 1391(b) does not require this Court to determine the 'best' forum, or 'the forum with the most substantial events.'" *Lannett Co., Inc. v. Asherman*, Civil Action No. 13-2006, 2014 WL 716699, at *4 (E.D. Pa. Feb. 24, 2014). Rather, we only need to find that "a substantial part of the events occurred here." *Id.*

III.

We previously noted that "venue will not be proper in a district for a defamation claim if injury is the only event occurring in that district." (*See* Doc. No. 35 at p. 40 (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 642 (E.D. Pa. 2003)).) However, we also observed that in defamation cases, "courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if the injury was suffered in the same district." (*See* Doc. No. 35 at p. 40 (quoting *DaimlerChrysler Corp. v. Askinazi*, No. CIV.A. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) (collecting cases)); *see also DaimlerChrysler Corp.*, 2000 WL 822449, at *7 (holding that a substantial portion of events giving rise to the counterclaims occurred in the Eastern District of Pennsylvania, where the allegedly defamatory statements were made in Michigan but published in the Eastern District and publication caused injury to the counterclaimant's reputation in the Eastern District); *cf. Lomanno*, 285 F. Supp. 2d at 642–43 (holding that venue was improper in the Eastern District of Pennsylvania, where no party asserted that the allegedly defamatory statements were published in Pennsylvania); *Dobrick-Pierce v. Open Options*, No. 2:05CV1451, 2006 WL 2089960, at *6 (W.D. Pa. July 25, 2006) (concluding that venue was improper in the Western District of

Pennsylvania, where the plaintiff failed to allege any facts indicating that the allegedly

defamatory statements were published in Pennsylvania).)

Applying the law to the facts, we held that a substantial portion of events giving rise to

Plaintiffs' defamation claim occurred in Pennsylvania.  (Doc. No. 35 at 41.)  We explained that it

was "undisputed at least some of the allegedly defamatory statements were published in

Pennsylvania—the emails Hartleib sent to Abelson and Detective Goggin, both of whom he

knew were located in Pennsylvania, and to attorney Yates.  Further, Plaintiffs allege that as a

Pennsylvania based-business and business owner, respectively, the Firm and Weiser have

suffered injury within Pennsylvania."  (*Id.*)  In a footnote, we added a brief discussion on

Plaintiffs' allegation that after receiving a "tip" from Hartleib "about Silow's disbarred status

and role as a document reviewer in the Sprint Derivative Action," the *Wall Street Journal*

published an article entitled, "One Lawyer, 6,905 Hours Leads to $1.5 Million Bill in Sprint

Suit," which was then picked up by nearly one hundred media outlets.  (*Id.* at pp. 41–42 n.18

(citing Doc. No. 1 at ¶¶ 85–87).)  We discussed that in viewing Plaintiffs' allegations in the light

most favorable to them, the *Wall Street Journal* article provides further support to our holding

that venue is proper over the defamation claim.  (*See id.* (citing *DaimlerChrysler*, 2000 WL

822449, at *7 ("There is no dispute that although Goldfarb's statements were actually made in

Michigan, they were published in this district in the form of articles based on the press release,

the *Wall Street Journal* article, and the American Lawyer article.  Goldfarb argues that this

publication is tangential in nature . . . because he participated in the interviews that formed the

basis of the *Wall Street Journal* . . . . article[] . . . We find Goldfarb's reasoning

unpersuasive.")).)

In moving for reconsideration, Hartleib argues that this Court has made five clear errors of law or fact in holding that venue was proper in the Eastern District of Pennsylvania for Plaintiffs' defamation claim:  (1) relying on emails to a Pittsburgh-based attorney; (2) mentioning a *Wall Street Journal* article because Plaintiffs did not allege it was defamatory and Hartleib did not publish it; (3) not explicitly connecting Plaintiffs' injuries in Pennsylvania to a publication in the Eastern District; (4) considering emails Hartleib sent to a Detective Goggin because they are absolutely privileged; and (5) considering any remaining other events or omissions as substantial. (*Id.*)  We address each in turn.

As a preliminary matter, the Court acknowledges that in hindsight, when referring to the Eastern District, it should have been clearer and used the term "Eastern District" explicitly, as opposed to using the broader term Pennsylvania, which is comprised of the Western, Eastern, and Middle Districts.

As to Hartleib's first argument, Hartleib is correct that we may not consider Hartleib's emails to attorney Alfred Yates, who is located in Pittsburgh (which is in the Western District of Pennsylvania), in determining that venue in the Eastern District is proper.  The Court notes, however, that while it (mistakenly) mentioned Yates in its October 9 discussion of venue, the Court gave little, if any, weight to Hartleib's emails to Yates, which is why it had segregated Hartleib's emails to Yates out from Hartleib's emails to Abelson and Detective Goggin.  To that same end, the Court only mentioned the *Wall Street Journal* article in a footnote, noting that its widespread publication, Plaintiffs' allegations of Hartleib's involvement with the article, and Hartleib's acknowledgment that such an article, if determined to be defamatory, would be a "big deal," provided further support for our conclusion that venue was proper.  (*See* Doc. No. 35 at pp. 41–42 n.18.)  The Court's relegation of the *Wall Street Journal* article to a footnote noting that it merely

7

"provided further support," illustrated that this article was given little weight in the Court's determination of venue for this claim.

Rather, in holding that venue was proper, the Court heavily weighed Hartleib's emails to Abelson and Detective Goggin, both of whom Hartleib knew were located in the Eastern District, and the fact that Plaintiffs were allegedly injured in the Eastern District by said emails.  Even taking into account the fact that the Court referred to Pennsylvania as opposed to the Eastern District specifically, Hartleib's argument that the Court has not connected the place of the injury with the place of publication (*see* Doc. No. 37 at pp. 9–10) strikes the Court as disingenuous. Indeed, the Court clearly cited to case law explaining that courts routinely find that "venue is proper in a district in which the allegedly defamatory statement was published, particularly if the injury was suffered in the same district." (*See* Doc. No. 35 (quoting *DaimlerChrysler Corp.*, 2000 WL 822449, at *6).)  In applying that same case law to the facts of this case, the Court explained that "it was undisputed at least some of the allegedly defamatory statements were published in Pennsylvania [i.e., the Eastern District]—the emails Hartleib sent to Abelson and Detective Goggin, both of whom he knew were located in Pennsylvania [i.e., the Eastern District] . . . Further, Plaintiffs allege that as a Pennsylvania-based business and business owner respectively, the Firm and Weiser have suffered injury within Pennsylvania [i.e., the Eastern District]." (Doc. No. 35 at p. 41).  In the Court's recitation of the facts, we made clear that Abelson was a Philadelphia-based company (*see id.* at p. 9 ("Hartleib's vendetta against the Firm continued into early 2018, when he telephoned Abelson Legal Search located in Philadelphia")), which is indisputably within the Eastern District.  Moreover, it is a matter of well-known fact that Chester County, where Detective Goggin works, is within the Eastern District.  Finally, as discussed below, it is not up to Hartleib to conjecture whether Plaintiffs, who reside within the Eastern District, were injured by Hartleib's

emails to Abelson (*see* Doc. No. 37 at p. 10) or Detective Goggin (*see* Doc. No. 51 at p. 2 (arguing that "the Abelson and Detective Goggin emails are not the cause of any injury to Plaintiffs").)

Given these findings, the Court concluded—and continues to conclude—that venue was proper purely on the basis that Hartleib's allegedly defamatory emails were published in the Eastern District and Plaintiffs were injured in the Eastern District, where the Firm maintains a principal place of business and Weiser resides and works.  *See, e.g.*, *DaimlerChrysler Corp.*, 2000 WL 822449, at *6–7; *Lomanno*, 285 F. Supp. 2d at 642–43; *Dobrick-Pierce*, 2006 WL 2089960, at *6.

In his reply brief, Hartleib argues that "venue must be the cause of the injury for the location of the injury to be a factor in the venue analysis" and that "Plaintiffs cannot make one single cumulative claim for defamation out of multiple publications.  [Rather,] they must prove the elements for each publication that they allege constitutes defamation."  (Doc. No. 51 at pp. 1–2.) Hartleib then asserts that the "[e]mails to Abelson and Detective Goggin cannot be treated as one large defamation claim with a cumulative injury" and that "[t]he injury outside the venue cannot be pooled together with a publication inside the venue that resulted in no injury."  (*Id.* at p. 2.) Hartleib argues that because "the Abelson and Detective Goggin emails are not the cause of any injury to Plaintiffs," we improperly considered the fact that Plaintiffs were injured in the Eastern District of Pennsylvania.  (*Id.*)

First, Hartleib makes an unfounded assumption—he necessarily assumes that this Court even considered the other allegedly defamatory statements that took place outside of the Eastern District (e.g., Hartleib's contacts with Monica Ross-Williams or Hartleib's allegedly defamatory emails to members of the bar) in finding that Plaintiffs were injured here.  But even if Hartleib's assumption was correct, Hartleib never argued in his original motion to dismiss that we had to

consider each defamatory statement—or even each claim—individually in our venue analysis. (*See, e.g.*, Doc. No. 9-1 at pp. 8–11; Doc. No. 32 at pp. 8–10; Oral Argument Tr. at 32:17–25 (stating that we do not have to analyze venue claim by claim and explaining that he is merely "showing how even if [the court] went through it with a microscope and did it claim by claim, none of these single claims would have been substantial, let alone in the big picture"); *id.* at 33:18–13 (discussing venue as to Count III, defamation, mentioning only the Abelson emails, and failing to argue that we must consider all defamatory statements separately).  For this reason alone, we need not consider this argument, as Hartleib is essentially trying to raise a new argument that he has not raised before.  *See, e.g.*, *PBI Performance Prods.*, 514 F. Supp. 2d at 744; *Kennedy Indus.*, 2006 WL 1892685, at *1.

Second, to the extent that Hartleib is arguing that we may not consider the Abelson and Detective Goggin emails in our venue analysis because they were produced during jurisdictional discovery, Hartleib is mistaken.  *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) ("The Supreme Court instructs that 'where issues arise as to jurisdiction *or venue*, discovery is available to ascertain the facts bearing on such issues.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (emphasis added))); *see also* Oral Argument Tr. at 8:13–17 (Hartleib's counsel discussing how jurisdictional discovery was "limited to the issues of venue and jurisdiction"); *id.* at p. 12:19–25 (Hartleib's counsel stating that "[d]uring the course of venue discovery, we produced some copies of email communications between my client and . . . Abelson, and also with a detective who I believe was in Chester County by the name of Goggin or Goggins.").

Third, Hartleib claims that Plaintiffs were not injured by the Abelson or Detective Goggin emails because Plaintiffs and Abelson were in the process of settling Plaintiffs' lawsuit against

Abelson and criminal charges were not filed as a result of Hartleib's emails to Detective Goggin. (*See* Doc. No. 51 at p. 2; Oral Argument Tr. at 15:14–19 (arguing that the Abelson emails were "insignificant" to Plaintiffs' defamation claim because "nothing came of" the emails, Abelson "did not do anything with" them, and Abelson and Plaintiffs already had a "contentious relationship"); *id.* at 16:6–12 (arguing that the emails to Detective Goggin were also insignificant because "what he thinks of [Plaintiffs] is likely to have little or no impact on them, and nothing ever came of the contact with Detective Goggins [sic]").)   However, Hartleib does not cite to any authority to support his contention.

Hartleib also notes that "[w]hen discussing [his] contacts with Abelson and Detective Goggins [sic] in their final brief, Plaintiffs claimed that they were of a defamatory character but made no argument that they resulted in any harm."  (Doc. No. 37 at p. 10.)  Hartleib makes much ado about nothing.  "A statement is defamatory if 'it tends . . . to harm the reputation of another [so] as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (citation omitted). Therefore, in arguing that the Abelson and Detective Goggin emails were defamatory, Plaintiffs implicitly addressed the fact that those emails tended to also harm their reputation.

In addition, in their complaint, Plaintiffs allege that, as a general matter, they were injured by Hartleib's defamatory statements (*see* Doc. No. 1 at ¶ 54 ("The effect of Hartleib's defamatory statements to third parties has been to injure Plaintiffs' business and professional reputations.")), and then in their supplemental brief, they argue that the Abelson and Goggin emails, which were published in this District, were defamatory and supplement their defamation claim, and that venue is proper over all their claims (*see* Doc. No. 33 at p. 9).  Hartleib does not cite to any authority stating that this is insufficient, or that Plaintiffs had to re-file an amended complaint after

jurisdictional discovery was completed before we could rule on his motion to dismiss for lack of personal jurisdiction and improper venue.  In sum, Hartleib has simply not met *his burden* of showing that venue is improper here.

Next, we turn to Hartleib's argument, raised for the first time in his motion to reconsider, that the emails he sent to Detective Goggin are absolutely privileged and therefore cannot give rise to Plaintiffs' defamation claim.  (*See* Doc. No. 37 at pp. 10–11.)  Hartleib argues that because he alleges in his emails that Weiser committed fraud, conspiracy, and perjury and specifically expresses his interest in pursuing criminal charges, "[i]t is without question that Hartleib's communications with Detective Goggin are absolutely privileged and not actionable."[3]  (*Id.* at p. 11.)

However, Hartleib's contention that his emails to Detective Goggin are absolutely privileged is too little, too late.[4]  While the Detective Goggin emails were not produced until the

---

[3] As Hartleib references, "[i]t is well-established in Pennsylvania that communications made in the course of judicial proceedings are absolutely privileged."  *Schutter v. Herskowitz*, Civil Action No. 07-3823, 2008 WL 2726921, at *3 (E.D. Pa. July 11, 2008).  The Pennsylvania Supreme Court has held that "[a]ll charges, all allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, are absolutely privileged.  However false and malicious, they are not libelous."  *Id.* (quoting *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (Pa. 1967)).

[4] The Court acknowledges that *Pawlowski v. Smorto*, 588 A.3d 36 (Pa. Super. Ct. 1991), provides compelling authority for Hartleib's contention that his emails to Detective Goggin are absolutely privileged.  In *Pawlowski*, the Pennsylvania Superior Court held that the absolute privilege applied to statements allegedly made by the appellees to the District Attorney and State Police, in which the appellees accused the appellant of perjury.  *Id.* at 40, 43.  Because the allegedly defamatory statements were absolutely privileged, the Superior Court affirmed the trial court's dismissal of the appellant's defamation claim.  *Id.* The Superior Court explained that "[i]t has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."  *Id.* at 41 (collecting cases).  Moreover, "the existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement.  The privilege is absolute and cannot be destroyed by abuse."  *Id.*  The Superior Court considered the public policy reasons for having the absolute privilege—specifically the aim of "ensuring free and uninhibited access to the judicial system"—and reasoned that policy was "obviously served by application of the privilege to statements made solely to law enforcement officials for the purpose of initiating criminal charges."  *Id.* at 42.  Because the statements were made solely to law

parties conducted jurisdictional discovery, which occurred after Hartleib filed his motion to dismiss (Doc. No. 9), Hartleib did not raise the absolute privilege argument in his motion to dismiss supplemental brief (*see* Doc. No. 32) or during oral argument,[5] both of which occurred *after* jurisdictional discovery was completed.  Nor did he ask to file a reply brief after Plaintiffs made clear in their supplemental brief that they were relying on Hartleib's emails to Detective Goggin to support their defamation claim.  (*See* Doc. No. 33 ("There can be no doubt about the defamatory and intentionally hurtful, outrageous and atrocious nature of Hartleib's e-mails to Abelson and Goggin.").)  Moreover, Hartleib did not ask for permission to file additional briefing after oral argument, when the Court's line of questioning made clear that it was considering Hartleib's emails to Detective Goggin in analyzing whether personal jurisdiction in Pennsylvania and venue in the Eastern District were proper.  Hartleib cannot raise new arguments now, in this final hour,

---

enforcement officials and the complaint conceded that the statements were made at least in part for the purpose of convincing the proper authorities to institute criminal proceedings against the appellant, the Superior Court found that the statements "fit squarely within the absolute privilege."  *Id.* at 43.

[5] Hartleib's counsel only made one privilege argument during oral argument:  he argued that the litigation privilege could potentially apply, which was limited solely to the context of Hartleib representing himself and reaching out to others to assist with his own lawsuit.  But Hartleib's counsel also added that he had "got[ten] ahead of himself" by mentioning the litigation privilege and explained that it related to a substantive defense, rather than why we do not have personal jurisdiction over this case or why venue is improper here.  *See* Oral Argument Tr. at 18:3–16 ("You also have to remember, Your Honor, that my client was representing himself.  It was tantamount to an attorney reaching out to a witness to assist with his lawsuit . . . *I am jumping ahead to a definition [sic] defense, Your Honor, but my client was essentially operating as his own attorney when these contacts were being made.  So I am not necessarily saying that's part of the discussion here, I just got ahead of myself on the argument.*") (emphasis added).  Nor was Hartleib's counsel specifically referring to Hartleib's emails to Detective Goggin when he brought up the litigation privilege during oral argument.  Rather, he broached the topic when discussing the contacts at issue in this case, which included "a contact with a plaintiff that was involved in the Kansas litigation and is from Michigan," "an article that was published in the New York Post or one of their publications," and contact with the Abelson search firm.  (*Id.* at 17:13–18:18.)  In sum, until this motion to reconsider, Hartleib's counsel never argued that because Hartleib emailed Detective Goggin to express interest in pursuing criminal charges, the emails sent to Goggin were absolutely privileged.

on a motion for reconsideration.[6]  *See, e.g.*, *PBI Performance Prods.*, 514 F. Supp. 2d at 744 ("A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or to correct mistakes it made in its previous one.  A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." (quotation marks and citation omitted)); *Kennedy Indus.*, 2006 WL 1892685, at *1 (same).

Finally, we reject Hartleib's contention that any remaining acts or events are not substantial.  As explained above, we gave little weight all along to the *Wall Street Journal* article and emails sent to attorney Yates.  Additionally, we still consider the emails Hartleib sent to Detective Goggin because Hartleib did not previously argue that they were absolutely privileged. Given the weight the Court gives to the same information we relied upon before, Hartleib's emails to Detective Goggin and Abelson, we find these events or omissions are substantial enough to find venue is proper in the Eastern District.  Therefore, Hartleib's reconsideration motion essentially asks the Court to relitigate matters we already ruled on, which we cannot do.  *See, e.g., Palladino v. Governor of Pa.*, 589 F. App'x 61, 64 (3d Cir. 2014) (noting that motions to reconsider "may not be used to relitigate old matters"); *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("In order to show clear error or manifest injustice, the [moving party] must base its motion on arguments that were previously raised but were overlooked by the Court—'parties are not free to relitigate issues that the Court has already decided.'" (citation omitted)); *Kennedy Indus.*, 2006

---

[6] We also note that this is not a case where Hartleib is arguing that there is new evidence available that was not available when the court granted the motion.  *See Max's Seafood Café ex rel. Lou-Ann, Inc.*, 176 F.3d at 677.  Rather, Hartleib argues that this Court made clear errors of fact or law in relying upon Hartleib's emails to Detective Goggin, which he claims are absolutely privileged.  And in any event, the Detective Goggin emails have been in Hartleib's possession for some time, were produced during jurisdictional discovery, and were relied upon in Plaintiffs' September 8, 2020 brief (which was filed a month before this Court entered its opinion).

WL 1892685, at *1 (explaining that "motions for reconsideration . . . may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court" (quotation marks and citation omitted)).

                                     IV.

    In sum, the Court continues to find that venue is proper in the Eastern District as to Plaintiffs' defamation claim, and we deny Hartleib's motion for reconsideration.

    An appropriate Order follows.