**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE WEISER LAW FIRM, P.C., and** | : | |
| **ROBERT B. WEISER, ESQUIRE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.: 2:19-CV-02728-KSM** |
| | : | |
| **MICHAEL HARTLEIB** | : | |
| | : | |

### PLAINTIFFS' RESPONSE TO
### DEFENDANT'S STATEMENT OF UNDISPUTED FACTS[1]

A.    **The Parties**

1.    Plaintiff, The Weiser Law Firm, P.C. ("Law Firm") is a Professional Corporation

located in Pennsylvania, 19312. *Amended Complaint, Doc # 69, p. 1, ¶ 1.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion of law**

**to which no substantive response is required; to the extent deemed otherwise, the paragraph**

**is denied. The paragraph is further denied insofar as the operative *FAC* (Doc No. 69, the**

**"Amended Complaint" or "FAC") is a writing, the content of which speaks for itself; any**

**characterization thereof or averment which contradicts the content of that writing is**

**specifically denied. It is solely admitted that The Weiser Law Firm, P.C. (the "Law Firm")**

**is a plaintiff in the above-captioned matter (the "Action") and that the same is organized as**

**a professional corporation located in the Commonwealth of Pennsylvania. [FAC, Doc. No.**

**69, p. 1, ¶ 1].**

---

[1] Plaintiffs' have utilized Defendant's Statement of (purported) Undisputed facts in the exact same layout as produced in a word document to Plaintiffs' counsel on the morning of December 15, 2022 except that spacing may differ for the convenience of the Court. For ease of reference, responses to each paragraphed purported undisputed fact follow each paragraph with the preceding signal of "**RESPONSE**:" and are all typed in **bold** typeface to differentiate from Defendant's allegations. Plaintiffs' inclusion of material authored by Defendant should not be construed as an admission of any fact or legal conclusion contained therein. This document is referred to herein as the "Response."

2.    Plaintiff, Robert B. Weiser ("Weiser") is a Pennsylvania Resident. *Amended Complaint, Doc # 69, p. 1, ¶ 3.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the operative FAC (Doc. No. 69) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Robert B. Weiser, Esquire ("Weiser" or, together with the Firm, "Plaintiffs") is a plaintiff in the Action and that Weiser resides in the Commonwealth of Pennsylvania. [Amended Complaint, Doc. No. 69, p. 1, ¶ 3].**

3.    Defendant, Michael Hartleib ("Hartleib") is a resident of California. *Amended Complaint, Doc # 69, p. 2, ¶ 4.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the operative Amended Complaint (Doc. No. 69) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Michael Hartleib ("Hartleib" or "Defendant") is the sole defendant named in the Action and that Hartleib resides in the State of California. [Amended Complaint, Doc. No. 69, p. 2, ¶ 4].**

B.       **Factual and Procedural Background**

4.   Plaintiffs initiated this action on June 24, 2019 against Defendant, Michael Hartleib.

*Initial Complaint, Doc. #1, p. 1.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the mooted first complaint (Doc. No. 1, the "Complaint") as well as the docket of this Action are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the contents of those writings is specifically denied. It is further denied that the Complaint has any relevance to the pending Motion for Summary Judgment (Doc. No. 193, the "MSJ"). It is solely admitted that Plaintiffs initiated the Action on June 24, 2019 and named Hartleib as the sole defendant in the Complaint. [Amended Complaint, Doc. No. 1, p. 1].**

5.   In their original Complaint, Plaintiffs had brought claims for vexatious litigation, abuse of process, defamation, intentional infliction of emotional distress, negligent misrepresentation, interference with prospective contractual relations, and tortious interference with contract. *See Initial Complaint, Doc. # 1, p. 35, 45, 47, 54, 55, 59, 62.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the Complaint (Doc. No. 1) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is further denied that the Complaint has any relevance to the pending MSJ. It is solely admitted that the Complaint set forth claims against Defendant for (1) vexatious litigant, (2) abuse of civil litigation**

process, (3) defamation, (4) intentional infliction of emotional distress, (5) negligent misrepresentation, (6) tortious interference with prospective contractual relations, and (7) tortious interference with contract. [Complaint, Doc. No. 1, pp. 35-44, ¶¶ 163-176, pp. 45-47, ¶¶ 177-186, pp. 47-54, ¶¶ 187-196, pp. 54-55, ¶¶ 197-201, pp. 55-58, ¶¶ 202-222, pp. 59-61, ¶¶ 223-237, pp. 62-64, ¶¶ 238-245].

6. On August 23, 2019, Hartleib filed motions to dismiss for lack of jurisdiction and improper venue. *See Motion to Dismiss, Doc. #9.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced motions to dismiss (Doc. No. 9, together, the "First Motion to Dismiss") is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that the First Motion to Dismiss has any relevance to the pending MSJ. It is solely admitted that Hartleib filed the First Motion to Dismiss on August 23, 2019. [First Motion to Dismiss, Doc. No. 9].**

7. After a number of briefs, limited discovery, and oral argument, the Court dismissed Counts I, V, VI, and VII (vexatious litigant order, negligent misrepresentation, intentional interference with contractual relations, and tortious interference) for lack of personal jurisdiction and Count II (abuse of process) for improper venue. *See Order, Doc. #36. p. 1.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced briefs, discovery, and**

**ultimate order of the Court which disposed of the First Motion to Dismiss (Doc. No. 36, the "Jurisdictional Order") are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the contents of those writings is specifically denied. It is further denied that the referenced Order has any relevance to the pending MSJ. It is solely admitted that the Court entered the Jurisdictional Order (Doc. No. 36) on October 9, 2020 which pertinently provided that Plaintiffs' claims for vexatious litigant, negligent misrepresentation, intentional interference with contractual relations, and tortious interference were dismissed "for lack of personal jurisdiction" and Plaintiffs' claim for abuse of process was dismissed "for improper venue." [Jurisdictional Order, Doc. No. 36, p. 1].**

8. Hartleib's motions were denied as to the remaining Counts III and IV (defamation and IIED). *Order, Doc. #36, p. 1.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the Jurisdictional Order (Doc. No. 36) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is further denied that referenced Order has any relevance to the pending MSJ. It is solely admitted that the Jurisdictional Order (Doc. No. 36) provided that the First Motion to Dismiss filed by Defendant was denied in its entirety with respect to Plaintiffs' claims for defamation and IIED as set forth in the First Complaint. By way of further response and without waiving the foregoing, Hartleib sought reconsideration of the Jurisdictional Order by way of motion**

(Doc. No. 37) which reconsideration request was denied by Order of the Court dated November 17, 2020 (Doc. No. 57). [Jurisdictional Order, Doc. No. 36, p. 1].

9.  Pursuant to the Court's August 5, 2019 Order bifurcating Hartleib's intended 12(b) motions, Hartleib was granted leave on October 28, 2020 to file a 12(b)(6) motion. *Order, Doc. #41, p. 1.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced order (Doc. No. 41) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that referenced order has any relevance to the pending MSJ. It is solely admitted that the Court's order of October 28, 2020 (Doc. No. 41) provided, "upon consideration of Defendant Michael Hartleib's Motion for Leave to File a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure […] and the Honorable Mitchell S. Goldberg's August 5, 2019 Order […], it is ordered that Hartleib's motion is granted and Hartleib may file a 12(b)(6) motion." [Doc. No. 41, p. 1].**

10. Plaintiffs then filed a Motion for Leave to File First Amended Complaint on November 12, 2020. *Motion to Leave to File First Amended Complaint, Doc. #50.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the motion for leave to file an amended complaint (Doc. No. 50, the "Leave to Amend Motion") is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of**

those writings is specifically denied. It is further denied that the referenced Leave to Amend Motion has any relevance to the pending MSJ. It is solely admitted that Plaintiffs filed the Leave to Amend Motion (Doc No. 50) was filed on November 12, 2020.

11. Hartleib filed a Motion to Dismiss the original Complaint on November 13, 2020. *Motions to Dismiss, Docs. #52; #53.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 52 and 53, the "First 12(b)(6) Motion") is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that the First 12(b)(6) Motion has any relevance to the pending MSJ. It is solely admitted that Defendant filed the First 12(b)(6) Motion on November 13, 2020.**

12. The Court granted Hartleib's Motion to Withdraw his Motion to Dismiss without prejudice pending the Court's ruling on Plaintiff's Motion for Leave. *Motion to Withdraw and Order Granting Motion to Withdraw, Docs. #61; #63, p. 1. ¶ 1.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced motion to withdraw (Doc. No. 61) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that the referenced motion to withdraw has any relevance to the pending MSJ. It is**

**solely admitted that Defendant filed the referenced motion to withdraw (Doc. No. 61) while the Leave to Amend Motion (Doc. No. 50) was pending.**

13. The Court granted leave on January 19, 2021 and the First Amended Complaint was filed on January 21, 2021. *Order Granting Motion to Leave and Amended Complaint, Docs. #68, p. 1; #69.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced order (Doc. No. 68) and the FAC (Doc. No. 69) are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that the referenced Order has any relevance to the pending MSJ. It is solely admitted that the Court granted Plaintiffs leave to file the Amended Complaint (Doc. No. 69) by order dated January 19, 2021 (Doc. No. 68). [*See* Exhibit 1].**

14. According to Plaintiffs' Amended Complaint, in late 2008, Hartleib sought counsel from an attorney by the name of Bruce G. Murphy regarding the loss in value of shares he owned in the Sprint Corporation and Nextel Communications when the two companies merged. *Amended Complaint, Doc. # 69, p. 2, ¶11. Doc. #69's Ex. 1, p. 1.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion of law to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced FAC (Doc. No. 69) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that "[o]n or about November 25, 2008, Hartleib e-mailed Bruce G. Murphy, Esquire […]**

regarding the loss in value of shares he owned in Sprint Corporation and Nextel Communications when the two companies merged to become Sprint Nextel Corporation in 2005." [Amended Complaint, Doc. No. 69, ¶ 11].

      15. Mr. Murphy contacted Plaintiffs and began exploring a potential shareholder derivative action. *See Amended Complaint, Doc. # 69, p. 2 – 4, ¶ 12 - 25.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that: (a) Murphy forwarded an email from Hartleib to Weiser (FAC, ¶ 13), (b) the Law Firm investigated the Sprint/Nextel Merger (FAC, ¶ 14), (c) the first securities class action lawsuit based on the Sprint/Nextel Merger was filed on March 10, 2009 (FAC, ¶ 15); (d) that other securities class action lawsuits based on the Sprint/Nextel Merger were filed with Robbins Geller and Motley Rice LLC appointed as co-lead counsel (FAC, ¶¶ 16-17); (e) that the Law Firm investigated the potential of a shareholder derivative action to bring on behalf of Sprint (FAC, ¶¶ 18-19), (f) Weiser asked Murphy if Hartleib or another client was interested in initia[t]ing a shareholder suit on behalf of Sprint (FAC, ¶ 20), (g) Murphy confirmed he had clients interested in a shareholder suit which prompted Plaintiffs to draft a complaint (FAC, ¶¶ 21-22) which they provided to Murphy in March of 2009 (FAC, ¶ 23), (h) Plaintiffs understood Hartleib to be one of Murphy's potential clients but Plaintiffs never engaged with Hartleib as a client (FAC, ¶¶ 24, 26, &36).**

16. Weiser and Hartleib first made contact during a telephone call which occurred on March 26, 2009. *Amended Complaint, Doc. # 69, p. 4 – 5, ¶ 27 - 31.*

**RESPONSE:** **Admitted. By way of further response, during the referenced call, Hartleib claimed to have spent hundreds of hours researching the Sprint/Nextel Merger (FAC, ¶ 28) and that he was interested in seeking appointment as "lead plaintiff" in the Sprint Securities Action (FAC, ¶ 29) and implied his interest in sharing attorneys' fees that the Law Firm might recover relative to a potential derivative action brought on behalf of Sprint.**

17. On March 27, 2009, Plaintiffs informed Mr. Murphy that they would not be representing Hartleib. *Amended Complaint, Doc. # 69, p. 5, ¶ 33, Ex. 2, p. 1.*

**RESPONSE:** **Admitted. By way of further response and without waiving the foregoing, Plaintiffs never represented Hartleib in any capacity.**

18. Plaintiffs chose to represent another Sprint shareholder by the name of Monica Ross-Williams, a Michigan resident, in a shareholder derivative lawsuit and Hartleib obtained other counsel years later to file a separate shareholder derivative lawsuit in July of 2011. *Amended Complaint, Doc. # 69, p. 6, ¶ 37-38.*

**RESPONSE:** **Admitted in part; denied in part. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) and exhibits are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Plaintiffs represented Monica Ross-Williams in connection with the Sprint Derivative Litigation.**

19. Ms. Rose-Williams' and Hartleib's suits were part of a group of shareholder derivative lawsuits filed in state and federal court in Kansas. *Amended Complaint, Doc. # 69, p. 6, ¶ 37-38; p. 8, ¶ 48.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) and exhibits are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Plaintiffs represented Monica Ross-Williams in connection with the Sprint Derivative Litigation which was consolidated in the State Court of Kansas.**

20. In 2016, Hartleib filed an objection in Kansas State Court to a proposed settlement of the Sprint shareholder derivative lawsuits which included $4.2 million in attorneys' fees. *Amended Complaint, Doc. # 69, p. 8, ¶ 50.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) and exhibits are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Hartleib objected to the already approved settlement in the Sprint Derivative Litigation.**

21. Plaintiffs allege that Hartleib sent Weiser emails on May 24, 2016, May 31, 2016, and June 28, 2016 regarding Hartleib's objection and seeking documentation in support of the fees the Law Firm was submitting as part of the settlement. *See Amended Complaint, Doc. # 69 ¶ 56-58, Ex. 8-10.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) and exhibits are writings, the contents of which speak for**

themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.

22. Mr. Hartleib appeared *pro se* at a hearing regarding Plaintiffs' proposed settlement on May 26, 2016 arguing that the proposed settlement lacked meaningful reform and that the requested fees were not justified. *See Amended Complaint, Doc. #69, p. 9, ¶ 56.*

**RESPONSE:** **Admitted in part; denied in part. The paragraph is denied insofar as the referenced FAC (Doc. No. 69) and exhibits are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Hartleib appeared at a hearing to object to the settlement in the Sprint Derivative Litigation.**

23. After hearing arguments from counsel for the Weiser Law Firm, other attorneys, and Hartleib, the Kansas trial court requested an "itemization of your time" from Plaintiffs and noted "I need to see what it is you['re] spending your time doing." *See Portions of the Hearing transcript attached hereto as Exhibit A, p. 144, ¶ 20 – p. 145, ¶ 2.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced transcript is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

24. The Kansas trial court then performed an *in camera* review of billing records submitted by Plaintiffs as part of supplemental filings following the hearing. *See Ross-Williams v. Bennett*, 11-CV-1688 (Kan.Dist.Ct.)  *November 22, 2016 Memorandum Opinion attached hereto as Exhibit B, p. 15.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

25. The Kansas trial court agreed with Mr. Hartleib noting that "the reforms may be far less effective than as portrayed" by Plaintiffs in "their filings and in their oral statements…". *Memorandum Opinion, Exhibit B, p. 11.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. By way of further response and without waiving the foregoing, the referenced memorandum actually reads, "After closely examining them, however, the reforms may be far less effective than as portrayed by the parties in their filings and oral statements at the settlement conference in May." [Motion, Ex. B, p. 11].**

26. The Court specifically noted that it "does not think the results achieved by the Plaintiff's counsel warrant a $4.25 million fee award." *Memorandum Opinion, Exhibit B, p. 11.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

27. The Court noted that of the "[o]f the nearly 18,000 of work, 6905.25 of those hours were billed by attorney Alexander J. Silow for document review. This is astonishing! The adequacy of Mr. Silow's billing records are discussed in detail below." *Memorandum Opinion, Exhibit B, p. 14*.

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

28. The Kansas trial court performed a "comprehensive review" of the billing records submitted. "The billing records submitted by the Weiser Law Firm, the document review was handled by attorney Alexander J. Silow, who is of counsel to the firm. The Weiser Law Firm's declaration reflects that Mr. Silow's regular billing rate is $300 per hour." *Memorandum Opinion, Exhibit B, p. 28*.

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

29. The Kansas trial court "[found] that the hours billed to this matter are grossly excessive…" finding "disturbing billing patterns" and that "counsel's billing history relating to the document review tells a very different story" from the statements made by counsel from the Weiser Law Firm. *Memorandum Opinion, Exhibit B, p. 27 - 28*.

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

30. A significant portion of the Kansas Court's opinion was dedicated to the impossibility of the work that was purportedly performed by Plaintiffs. *See generally Memorandum Opinion, Exhibit B.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

31. Plaintiffs submitted their bills of Mr. Silow as part of their supplemental materials. *See Memorandum Opinion, Exhibit B, p. 28.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

32. It was specifically stated in the memorandum opinion, "the Court does not find that Mr. Silow's billing records are remotely accurate or credible." "[I]t it seems that the vast amount of work performed on this case was illusory, perhaps done for the purpose of inflating billable hours to push the effective billing rate down in order to support a multi-million dollar fee award." *Memorandum Opinion, Exhibit B, p. 29.*

> [T]he billing records reviewed by the Court paint a troublesome portrait of exploiting Sprint's missteps for a substantial reward for counsel, and minimal relief to Sprint and its shareholders that suffered. The billing records submitted furthermore lack credibility. The focus appears to have been upon an easy, cheap settlement in the first instance. No motion practice or serious discovery efforts were ever undertaken to address the egregious acts originally alleged against the individual Defendants who were responsible for the losses to Sprint.

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

33. The Kansas State Court approved the overall settlement but cut the attorneys' fees for Plaintiffs and their peers by 90%. *See Amended Complaint, Doc. # 69, p. 10, ¶ 61.*

**RESPONSE:  Admitted.**

34. Weiser, the Law Firm, and the other attorneys in the consolidated Sprint Kansas derivative actions appealed the decision. *Amended Complaint, Doc. # 69, p. 12, ¶ 67.*

**RESPONSE: Admitted.**

35. Remarkably, Plaintiffs still dispute the Kansas trial court's findings that were upheld on appeal in the instant matter by claiming "a billing audit reinforced the validity of the hours Silow worked….". *Amended Complaint, Doc. # 69, p. 12, ¶ 67.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. By way of further response and without waiving the foregoing, the hours worked were supported by a billing audit.**

36. As part of the Plaintiff's efforts to have the Kansas State Court alter or amend its ruling, Plaintiffs submitted a declaration of one Alexander J. Silow which was executed on December 20, 2016. *See Declaration of Alexander J. Silow attached hereto as Exhibit C.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced declaration is a writing, the content of which speaks for itself; any**

**characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Plaintiffs filed the referenced declaration.**

37. The declaration, drafted and filed by Plaintiffs, stated Mr. Silow was "Of Counsel" at The Weiser Law Firm and had worked with them on "many different matters including at least on case that proceeded to trial and a verdict and another action that settled on the eve of trial of trial." *See Declaration of Jeffrey Silow, Exhibit C, p.1, ¶ 1; p.1-2, ¶ 2.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced declaration is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Plaintiffs filed the referenced declaration. No evidence of record exists to suggest Plaintiffs alone drafted the referenced declaration. Furthermore, no evidence of record exists to suggest Plaintiffs knew that anything in the declaration was untrue.**

38. After the reduction in fees and the appeal was pending, it came to light that Alexander J. Silow, who Plaintiffs held out as "Of Counsel" at the Law Firm and who had worked for them on numerous cases over the course of a decade had been disbarred since 1987. *See Amended Complaint, Doc. # 69, p. 1, ¶ 61.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Jeffrey Silow had misrepresented himself to the Law Firm, including by providing another individual's bar number, as a barred attorney.**

39. Plaintiffs claim that they were "duped" by this attorney. *Amended Complaint, Doc. # 69, p. 10*.

**<u>RESPONSE:</u> Admitted in part; denied in part. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Jeffrey Silow had misrepresented himself to the Law Firm, including by providing another individual's bar number, as a barred attorney.**

40. However, the Court of Appeals of Kansas directly questioned this claim when upholding the lower court's fee reduction noting that it was the Law Firm's own resume that contained the false information, not the resume of Silow that was submitted to the Law Firm when he was hired:

> Interestingly, although the résumé of the Weiser Law Firm—which is part of the record on appeal—listed "Alexander Jeffrey Silow" as being "admitted to practice in Pennsylvania and the District of Columbia," Silow's résumé—which was attached to Weiser's letter—listed his name as "Jeffrey Silow" and did not state that he was a member of the Pennsylvania bar. Instead, Silow's résumé only listed the District of Columbia under the heading "Bar Admissions."
> …
>
> Although we will yield to the disciplinary authorities in the Commonwealth of Pennsylvania—or elsewhere—to sort out what the attorneys representing the plaintiffs in these derivative actions knew or should have known about the status of Jeffrey Silow's license to practice law, we find the information provided by Weiser to be very troubling.

*Ross-Williams on behalf of Sprint Nextel Corp. v. Bennett*, 55 Kan.App.2d 524, 543, 419 P.3d 608, 623 (2018), *review denied* (Nov. 21, 2018).

**RESPONSE: Denied. The paragraph is denied insofar as the referenced memorandum is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

41. In 2017, Plaintiffs filed suit in the Court of Common Pleas Chester County, Pennsylvania against Abelson Legal Search, a Philadelphia-based legal recruiting firm who recommended Silow in 2008, and Jeffrey Mark Silow himself. *The Weiser Law Firm P.C. vs. Abelson Legal Search And Jeffrey Silow* 2017-07778-CT; (herein referred to as the "Referenced Litigation").

**RESPONSE: Admitted.**

42. "Jeffrey M. Silow ("Silow") was hired by the Law Firm as a contract attorney on several occasions between 2008 and 2017 for the purposes of performing document review work; he was initially sourced through a Philadelphia-based legal search and placement firm, Abelson Legal Search ("Abelson"), with which the Law Firm had contracted." *Doc. # 69, p. 10, ¶ 59; p. 11, ¶ 64.*

**RESPONSE: Admitted.**

43. After Plaintiffs filed suit against Abelson and Silow, Hartleib contacted Abelson on five occasions between February 22, 2018 through June 2, 2018, making allegations regarding Plaintiffs conduct in the Sprint litigation describing Plaintiffs to be criminals, corrupt, inept, etc. and expressing the hope to work together on a cross-complaint in the Referenced Litigation. *Amended Complaint, Doc. #69, p. 3 –35, ¶ 156-164; Ex. 34 to 38.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. The paragraph is further denied insofar as it has no relevance to the pending MSJ. It is solely admitted that Defendant contacted Abelson.**

44. Plaintiffs claim that Abelson was responsible for vetting Silow and held him out as an attorney in good standing and were responsible for Plaintiffs being "duped". *Amended Complaint, Doc. # 69 p. 10; p. 10, ¶ 60.*

**RESPONSE: Admitted in part; denied in part. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. The paragraph is further denied insofar as it has no relevance to the pending MSJ. It is solely admitted that it was Abelson's responsibility to vet Silow.**

45. In his verified Answer with New Matter and Counterclaim in the Referenced Litigation, Silow stated that "the fee petition filed by the Firm is believed to have made intentionally false misrepresentations of fact to the Kansas Court that the Firm knew to be false." *See Silow's Answer with New Matter and Counterclaim as Exhibit D, p. 6, ¶ 47.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

46. He also averred that the declarations submitted in the Sprint litigation were drafted by the Law Firm. *Silow's Answer with New Matter and Counterclaim, Exhibit D, p. 7 - 8, ℙ 53.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

47. Silow averred that Plaintiffs were always aware of his true identity as his paychecks and tax information used his true name and social security number. *Silow's Answer with New Matter and Counterclaim, Exhibit D, p. 8, ℙ 55.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

48. Silow averred that Plaintiffs sought to "mask Silow's well-known status in the firm, as a non-attorney, to the Kansas Court." *Silow's Answer with New Matter and Counterclaim, Exhibit D, p. 11, ℙ 128.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

49. Despite Plaintiffs holding out Silow as "Of Counsel" and billing at a rate of $300 per hour, Silow averred that he was a para-professional earning $35/hr with the Law Firm and believed that Plaintiffs "falsely alleged in multiple litigations over a six-year time-span that Silow is a licensed attorney that commands a billing rate of $300 per hour." *Silow's Answer with New Matter and Counterclaim, Exhibit D, p. 8, ℙ 54.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

50. Abelson similarly averred that Plaintiffs "could not have reasonably believed Silow's named was other than Jeffrey Silow while Silow worked for plaintiff pursuant to the Agreement. Answering defendant only referred to Silow as 'Jeffrey Silow' and 'Jeff Silow' and never used 'Alexander' to refer to Silow." *See Abelson's Answer with New Matter, Counterclaim, and Crossclaim attached hereto as Exhibit E, p. 6 – 7, ¶ 55.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

51. Abelson also averred that Plaintiffs, in the Sprint Litigation "deceptively blamed Abelson Legal Search for its presentation of a false declaration when plaintiff communicated to the court that Abelson Legal Search had misrepresented Jeffrey Silow as Alexander J. Silow, misrepresented that Silow was a licensed lawyer in Pennsylvania and misrepresented Silow was a licensed lawyer in the District of Columbia." *Abelson's Answer with New Matter, Counterclaim, and Crossclaim Exhibit E, p. 16, ¶ 173.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced answer with new matter is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

52. On March 6, 2017 Hartleib sent Weiser, other attorneys involved in the Kansas derivative lawsuits, and an administrative assistant from to the Kansas State Court an email regarding Plaintiffs' billing practices, Plaintiffs' disbarred employee, and Plaintiffs' continued appeal of the reduction in fees. *See Amended Complaint, Doc. # 69, p. 12, ¶ 69, Ex. 12.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

53. On March 6, 2017 Hartleib contacted Ms. Ross-Williams, the representative plaintiff for lead counsel in the consolidated actions to express his concerns about the settlement and Plaintiffs' billing practices, which the Kansas State Court had already found to be "unbelievable" and "illusory". *See Amended Complaint, Doc. # 69, p. 12, ¶ 71.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

54. Plaintiffs allege that Hartleib referred to the Law Firm as a criminal enterprise during the phone call with Ms. Ross-Williams. *See Amended Complaint, Doc. # 69, p. 12, ¶ 71.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

55. On March 7, 2017 Hartleib sent Ross-Williams, Weiser, other attorneys involved in the Kansas derivative lawsuits, and the administrative assistant to the Judge an email regarding his prior contact with fellow derivative plaintiff Ross-Williams, accusing the Law Firm of fraudulent billing and criminal acts. *See Doc. # 69, p. 14, ¶ 76-77, p. 125-126, Ex. 14.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

56. On March 7, 2017 Hartleib sent Weiser, other attorneys involved in the Kansas derivative lawsuits, and an administrative assistant to the Judge an email regarding his contact with fellow derivative plaintiff, Ross-Williams and accused Weiser of fraudulent acts. *See Amended Complaint, Doc. # 69, p. 15, ¶ 79, p. 129, Ex. 14.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

57. Plaintiffs sought a protective order from the Kansas State Court of Appeals prohibiting Hartleib from contacting Ross-Williams and were successful. *Amended Complaint, Doc. # 69, p. 15, ¶ 80.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

58. On April 7, 2018, Hartleib sent Weiser and other attorneys involved in the Kansas derivative lawsuits an email regarding his motion to reconsider the Kansas State Court of Appeals' protective order. *See Amended Complaint, Doc. # 69, p. 16, ¶ 83, p. 131, Ex. 15.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

59. Hartleib allegedly provided a "tip" about the Sprint case proceedings to the *Wall-Street Journal* who published an article on March 13, 2017 quoting and summarizing the Kansas trial court opinion entitled "One Lawyer, 6,905 Hours Leads to $1.5 Million Bill in Sprint Suit." *See Amended Complaint, Doc. # 69, p. 17, ¶ 86; See also a copy of the Wall Street Journal article attached hereto as Exhibit F.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied. By way of further response, and without waiving the foregoing, Hartleib admits to discussing the referenced article with someone from the Wall Street Journal before it was published. Defendant specifically admitted to either calling, being called, or being referred to someone at the Wall Street Journal prior to the publication of the article referenced in the Motion and providing information for same. [Hartleib Dep. Day 1, 206-213].**

60. On April 12, 2018, Hartleib sent Weiser, other attorneys involved in the Kansas derivative lawsuits, and an administrative assistant to the Judge an email regarding a recent filing calling Weiser an embarrassment to the bar. *See Amended Complaint, Doc. # 69, p. 17, ¶ 88, p. 134, Ex. 16.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

61. On April 25, 2017, shortly after Plaintiffs' billing practices and the Kansas State Court's decision to cut their fees received national news coverage, a vulgar anonymous letter was sent <u>from</u> the Kennett Square, Chester County, PA post office to six judges sitting in Chester County Court of Common Pleas located in West Chester, Chester County, PA disparaging Plaintiffs, the Chester County Bar Association, and the judges of the Chester County Court of Common Pleas. *See Amended Complaint, Doc. # 69, p. 17, ¶ 89, p. 145, Ex. 17.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

62. The letter enclosed an "Attorney e-Newsletter" email sent to members of the Pennsylvania Bar by the Disciplinary Board of Supreme Court of Pennsylvania. *See Amended Complaint, Doc. # 69, p. 17, ¶ 89, p. 140, Ex. 17.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

63. The "Attorney e-Newsletter" contained an article summarizing the *Wall Street Journal* article. *See Amended Complaint, Doc. # 69, p. 17, ¶ 89, p. 140-141, Ex. 17.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

64. Hartleib did not draft or send the anonymous letter from the Kennett Square, Chester County, PA to the Chester County Court of Common Pleas in West Chester, Chester County, PA nor did he direct or encourage anyone else to do so. See *Hartleib affidavit Doc #9's Exhibit A.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

65. However, Plaintiffs attempt to attribute this letter to Hartleib. *See Amended Complaint, Doc. # 69, p. 17, ¶ 89.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

66. On May 19, 2018 Hartleib sent Weiser and other attorneys involved in the Kansas derivative lawsuits an email regarding a recent pleading that was filed. *See Amended Complaint, Doc. # 69, p. 19, ¶ 93, p. 145, Ex. 18.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

67.  On June 2, 2018, Hartleib sent an email with a link to an article from the National Law

Journal Article with the body of the email accusing Plaintiffs of fraud and racketeering.

*See Amended Complaint, Doc. # 69, p. 19, ¶ 94, p. 148, Ex. 19.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

68. Plaintiffs allege that on August 17, 2018, Hartleib sent an email to Weiser regarding a

shareholder derivative suit in Central District of California. *See Amended Complaint,*

*Doc. # 69, p. 20, ¶ 97, p. 151, Ex. 20.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

69.  It is not alleged that this email was sent to anyone else. *See Amended Complaint, Doc.*

*# 69, p. 20, ¶ 97, p. 151, Ex. 20.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

70. On March 15, 2018, Hartleib, an Equifax shareholder, filed a Motion for Acceptance

of an *Amicus Curiae* Brief opposing the appointment of The Weiser Firm as Co-Lead

Counsel in *In re Equifax, Inc. Derivative Litigation,* No. 1:18-cv-00317-TWT in the

United States District Court for the Northern District of Georgia due to the Weiser

Firm's prior billing practices in the Sprint case. *See Amended Complaint, Doc. # 69, p.*

*21, ¶ 101, p. 153-162, Ex. 21.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

71. On March 22, 2018, the Law Firm emailed a copy of their response in opposition to Hartleib's Motion to which Hartleib responded acknowledging receipt. *See Amended Complaint, Doc. # 69, p. 23, ¶ 107, p. 164, 178, Ex. 22, 23.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

72. Hartleib appeared at oral argument in United States District Court for the Northern District of Georgia on competing motions for appointment of lead counsel and addressed the court. *Amended Complaint, Doc. # 69, p. 23, ¶ 108.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

73. Plaintiffs do not allege when this hearing took place or what was said at the hearing. *See Amended Complaint, Doc. # 69, p. 23, ¶ 108.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

74. The United States District Court for the Northern District of Georgia declined the Law Firm's motion for appointment of lead counsel in *In re Equifax, Inc. Derivative*

*Litigation* choosing to select other counsel and Hartleib emailed Weiser a copy of the judge's order. *See Amended Complaint, Doc. # 69, p. 23, ¶ 109, p. 180, Ex. 24.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced FAC and attachments are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

75. On August 28, 2018, Hartleib reached out to the court via email in *In re Big Lots, Inc. Shareholder Litigation,* No. 2:12-cv-445 in the United States District Court for the Southern District of Ohio expressing similar concerns to the ones he expressed in the *Equifax* case. *See Amended Complaint, Doc. # 69, p. 24, ¶ 112.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced complaint and email are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. By way of further response, the Court has taken judicial notice of the fact that thirty attorneys would have received the referenced email to Judge Watson. [Doc. No. 151]. Further, Hartleib has admitted that the apparent purpose of contacting Judge Watson was not about how many hours were billed in the referenced litigation but "who" billed them. [Hartleib Dep. Day 1, 320:24-321:10].**

76. Plaintiffs do not allege that the email was sent to anyone other than the assigned judge and specifically state that the settlement and attorneys' fees were approved in that case. *See Amended Complaint, Doc. # 69, p. 24, ¶ 112, p. 182., Ex. 25.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced complaint and email are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. By way of**

**further response, the Court has taken judicial notice of the fact that thirty attorneys would have received the referenced email to Judge Watson. [Doc. No. 151]. Further, Hartleib has admitted that the apparent purpose of contacting Judge Watson was not about how many hours were billed in the referenced litigation but "who" billed them. [Hartleib Dep. Day 1, 320:24-321:10].**

77. On March 5, 2019, Hartleib, a CenturyLink shareholder, filed an Amicus Curiae Brief opposing the appointment of Robbins Arroyo LLP and "the Weiser Firm, et. Al." as Lead Counsel in *In re CenturyLink Sales Practices and Securities Litigation,* No. 17-md-2795-MJD-MM in the United States District Court for the District of Minnesota expressing similar concerns to the ones he expressed in the *Equifax* case. The case included consolidated, separately filed shareholder derivative cases. *See Amended Complaint, Doc. # 69, p. 24 – 25, ¶ 116-117, p. 196, Ex. 26.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied.**

78. Hartleib appeared at oral argument in United States District Court for the District of Minnesota on competing motions for appointment of lead counsel and addressed the court. *See Amended Complaint, Doc. # 69, p. 27 – 28, ¶ 129-132, p. 215-262, Ex. 27.*

**RESPONSE: Admitted.**

79. According to Plaintiffs, they were part of a proposed "support structure" of another firm seeking appointment as lead counsel. *Amended Complaint, Doc. # 69, p. 25, ¶ 118.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced complaint is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. By way of further response and without waiving the foregoing, Weiser testified that, relative to the CenturyLink Litigation, "You know, that's a situation where we would ordinarily move to be appointed co or Lead Counsel and instead we agreed to support a structure; thereby taking a back seat, thereby earning less money. It is a way to kind of like build our good graces in the community. And we've done a lot of that. Like we've actively avoided either filing in Federal Court or moving to be appointed lead in Federal Court. Or in a couple cases we've made deals with people that we wouldn't make otherwise because we didn't want to be in dispute in Federal Court and have your client come along. So we've done like a lot of olive branching in the last three or four years in an effort to kind of like go along and get along.[Weiser Dep. Day 2, 291:12-292:2.**

80. Plaintiffs allege that on March 14, 2019, Hartleib sent an email to Jill Boren, administrative assistant to Judge Vano, who ruled on the Sprint Derivative Settlement in the Kansas State Court and copied attorneys involved in that litigation. *Amended Complaint, Doc. # 69, p. 29-30, ¶ 135-137, Ex. 28 p. 2-3.*

**RESPONSE:** **Denied. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. By**

way of further response and without waiving the foregoing, Defendant has admitted to sending the referenced email. [Hartleib Dep. Day 1, 288:16-17 ("Is this an email you sent? A. It appears so, yes."). By way of further response and without waiving the foregoing, no matter was pending before Judge Vano at the time the referenced email was sent. [*Id.*, 308:23-309:1]. When testifying further on the issue, Hartleib confirmed that there were no motions pending or rulings expected from Judge Vano at the time Statement No. 9 was transmitted. [*Id.*, 309:6-8]. Finally, Hartleib concludes *and admits* that his statements to Judge Vano (and all those copied) made in Statement No. 9 were not to elicit any relief or ruling from Judge Vano in any action pending before Judge Vano or in the CenturyLink Litigation. [*See id.*, at 309:20-310:10 ("*[By Mr. Rosenzweig:] But you weren't asking the Court to do anything, right?* [By Mr. Hartleib:] No. *[By Mr. Rosenzweig:] So you were just providing information for what purpose? What response did you expect?* [By Mr. Hartleib:] I didn't expect any response. I don't believe I ever expected or received any response, whatsoever, if Jill Boren[, Judge Vano's clerk,] thought it might be something that the judge would find interesting or relevant to <u>future</u> cases, or if another firm came before his Court, not just the Weiser firm, but any firm, it would give him information that he might otherwise not have.")(italic and bold-face emphasis added for convenience of the reader)].

81. The email accuses George Aguilar of Robbins Arroyo of misrepresenting what took place in the Sprint case at the hearing in the Equifax matter. *Amended Complaint, Doc. # 69, p. 29-30, ¶ 135-137, Ex. 28 p. 2-3.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. By**

way of further response and without waiving the foregoing, the email to Judge Vano accuses **Plaintiffs of being part of a "sinister" "elaborate scheme" to engage in *qui tam* litigation under "false pretenses" and as being part of the "corruption rife throughout" the shareholder derivative litigation bar.**

82. It also references to accusations contained in an anonymous letter Hartleib received.

*Amended Complaint, Doc. # 69, p. 29-30, ¶ 135-137, Ex. 28 p. 2-3.*

**RESPONSE:** **Admitted in part; denied in part. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. By way of further response and without waiving the foregoing, the email to Judge Vano accuses Plaintiffs of being part of a "sinister" "elaborate scheme" to engage in *qui tam* litigation under "false pretenses" and as being part of the "corruption rife throughout" the shareholder derivative litigation bar. It is solely admitted that the email references an anonymous letter which Defendant has claimed to no longer possess (Ex. 1, Hartleib Dep. Day 1, 301:1-5 ("I still have the envelope in which it came. Very strange. The envelope was open, had unusual postage on it, like strange postage I haven't seen before."), 300:4-6 ("Q... Was there a reason you didn't attach the anonymous letter? A. No.").[Amended Complaint, Doc. No. 69, Ex. 28].**

83. After Plaintiffs filed suit against Abelson and Silow, Hartleib contacted Abelson on five occasions between February 22, 2018 through June 2, 2018, repeating prior allegations regarding Plaintiffs conduct in the Sprint litigation describing Plaintiffs to be criminals, corrupt, inept, etc. and expressing the hope to work together on a cross-complaint. *Amended Complaint, Doc. #69, p. ¶ 156-164, Doc. #69, Ex. 34 to 38.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that this alleged fact has any relevance to the Motion for Summary Judgment.**

84.  Hartleib also emailed a Thomas Goggin, a Detective Sergeant at the Chester County District Attorney's Office in Chester County, Pennsylvania on four occasions from March 13, 14, 22, 2018 through May 14, 2018, accusing Plaintiffs of engaging in criminal conduct, committing perjury, providing information regarding the Kansas proceedings, expressing a desire to bring criminal charges against Silow and Weiser and inquiring as to whether Mr. Goggin's department had taken any action in the matter. *See Amended Complaint, Doc #69, p. 35-36, ¶ 165-169.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that this alleged fact has any relevance to the Motion for Summary Judgment.**

85.  In a final email to Detective Sergeant Goggin on November 6, 2018, "Mr. Goggin's, I am following up to see if any action was taken by your department. I am very trouble th[at] Alexander Silow was aware of his father's chicanery and likely complicate yet continues on as if nothing happened. Completely inconsistent with what he told the appellate court. Just received their attempt to impugn my integrity." *Amended Complaint, Doc. #69, p. 35-36, ¶ 165-171, Doc. #69, Ex. 39 to 43.*

**RESPONSE: Denied. The paragraph is denied insofar as the referenced email and complaint are writings, the contents of which speak for themselves; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is further denied that this alleged fact has any relevance to the Motion for Summary Judgment.**

86. Plaintiffs have brought claims for defamation, false light invasion of privacy, and commercial disparagement. *See Doc. #69, p. 38, 54, 46.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced complaint (Doc. No. 69) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is specifically denied. It is solely admitted that Plaintiffs' remaining claims in the instant Action (reserving any right to appeal) are defamation, false light, and commercial disparagement.**

87. Plaintiff Weiser had brought a claim for intentional infliction of emotional distress which he eventually agreed to dismiss after the close of discovery. *See Notice by The Weiser Firm, Doc #186.*

**RESPONSE: Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced notice (Doc. No. 186) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of those writings is**

**specifically denied. It is solely admitted that Weiser voluntarily withdrew his claim for intentional infliction of emotional distress.**

88. Hartleib filed a Motion to Dismiss the First Amended Complaint on February 9, 2021.

*Motion to Dismiss the First Amended Complaint, Doc. #72.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced motion (Doc. No. 151) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Defendant filed the referenced motion to dismiss. Plaintiffs deny any relevance this purported statement of fact has to the Motion for Summary Judgment.**

89. Hartleib's Motion raised, raised among other things, statute of limitations defenses for a majority of the statements alleged as well as the absolute privilege affirmative defense Pennsylvania law affords to statements made in the course of investigatory and judicial/or proceedings. *See Motion to Dismiss the First Amended Complaint, Doc. #72, p. 19, 15.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced motion (Doc. No. 72) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is solely admitted that Defendant argued, *inter alia*, that the statute of**

**limitations barred Plaintiffs' actions. Plaintiffs deny any relevance this purported statement of fact has to the Motion for Summary Judgment**

90. The Court ruled on the Motion to Dismiss on March 31st, 2022, dismissing fifteen of the seventeen statements as they pertain to the defamation, false light, and commercial claims. *Memorandum Order, Doc. #151.* The Court identified the statements in its ruling as follows:

**Statement No. 1**: A March 6, 2017 email from Hartleib to Judge Vano's administrative assistant and eleven attorneys stating that Weiser "made statements to the Appellate Court [which] were disingenuous at best" and accusing Weiser of "attempt[ing] to obfuscate [his] chicanery" and being "[one of] the corrupt parties." (Doc. #69, p. 39 ¶ 183(a).

**Statement No. 2**: A March 6, 2017 email from Hartleib to Ross-Williams stating that the Law Firm was a "criminal enterprise." (*Id.* at ¶ 183(b).)

**Statement No. 3**: A March 7, 2017 email from Hartleib to Ross-Williams, Judge Vano's administrative assistant, and fifteen attorneys stating that they were "unwitting victim[s] of [the Law Firm's] fraud committed against the Court" and that the Law Firm had "admitted to at least 1.6 million dollars in fraudulent bills submitted to the Court." (*Id.* at p. 39-40, ¶ 183(c).)

**Statement No. 4**: A March 7, 2017 email to Judge Vano's administrative assistant and fifteen attorneys accusing Weiser of making "self-serving misrepresentations," committing "fraudulent acts and bastardization of the judicial system," and having "little credibility." (*Id.* at p. 40, ¶ 183(d).)

**Statement No. 5**: An April 12, 2017 email from Hartleib to Judge Vano's administrative assistant and eleven attorneys calling Weiser "an embarrassment to the bar." (*Id.* at p. 40-41, ¶ 183(e).)

**Statement No. 6**: An April 7, 2018 email from Hartleib to Weiser and eight other attorneys accusing Weiser of "attempt[ing] to mislead the Appellate Court with incomplete records" and of making "personal attacks [that] smack of desperation." (*Id.* at p. 41, ¶ 183(f).)

**Statement No. 7**: A May 9, 2018 email from Hartleib to "numerous" attorneys stating, "Plaintiff Counsel, . . . when making false allegations against a party I would suggest you at least get it right. I am no expert, but I am pretty sure it would be libelous!" (*Id.* at ¶ 183(g).)

**Statement No. 8**: A June 2, 2018 email from Hartleib to "a host" of attorneys calling the Law Firm's work in the Sprint Litigation "the very definition of Racketeering." (*Id.* at ¶ 183(h).)

**Statement No. 9**: A March 14, 2019 email to Judge Vano's chambers asking Judge Vano to "set[] the record straight" in the CenturyLink Litigation. (*Id.* at p. 41-42, ¶ 183(i).)

**Statement No. 10**: An April 25, 2017 letter from Hartleib to members of the Chester County, Pennsylvania Court of Common Pleas stating that Judge Vano caught the Law Firm "in the act" of falsifying its bills. (*Id.* at p. 42, ¶ 184(a).)

**Statement No. 11**: An August 24, 2018 email from Hartleib to Judge Watson raising "concerns over Weiser's billing practices in [a] prior case." (*Id.* at p. 42, ¶ 184(b).)

**Statement No. 12**: A March 5, 2019 *amicus curiae* brief Hartleib filed in the CenturyLink Litigation opposing the Law Firm's role in the case and stating that the Law Firm used "deceased parties, friends and family members [who] lacked standing" as Plaintiffs and that the Law Firm "generate[ed] thousands of billable hours for illusory work, submit[ted] fraudulent time logs and [sought] hundreds of millions in unjust fees in cases across the country." (*Id.* at p. 42-43, ¶ 184(c).)

**Statement No. 13**: A March 6, 2019 statement Hartleib made at a hearing in the CenturyLink Litigation stating that the Law Firm was "up to no good" and was "billing illusory [hours]." (*Id.* at p. 43, ¶ 184(d).)

**Statement No. 14**: A February 22, 2018 email from Hartleib to Abelson stating that he had "exposed the fraud committed by the Weiser firm," decrying the Law Firm's actions as "unconscionable," and accusing the Law Firm of filing "multiple purjurious [sic] declaration[s] . . . to protect their duplicitous acts and criminal enterprise." (*Id.* at p. 44, ¶ 185(a).)

**Statement No. 15**: A February 24, 2018 email from Hartleib to Feinstein describing Weiser as "corrupt and inept." (*Id.* at p. 44, ¶ 185(b).)

**Statement No. 16**: A February 24, 2018 email from Hartleib to Feinstein informing her that the Law Firm was "unfit to be lead Counsel in any representative suit." (*Id.* at ¶ 185(c).)

**Statement No. 17**: March 14, 2018 and May 14, 2018 emails from Hartleib to Detective Goggin stating that Weiser "knew of Mr. Silow['s] fraud and conspiracy" and expressing disbelief that Weiser could "commit perjury and try to defraud the court and Sprint and walk away." (*Id.* at ¶ 185(d).)

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced memorandum (Doc. No. 151) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. <u>It is solely admitted that the Court identified Statement Nos. 9 and 11 as actionable and not privileged while dismissing causes of action relating to the other remaining statements.</u>**

91. In its memorandum opinion, the Court identified the two remaining statements as follows:

- Statement No. 9: A March 14, 2019 email to Judge Vano's chambers asking Judge Vano to "set the record straight" in the CenturyLink Litigation. ([FAC] ¶ 183(i).)
- Statement No. 11: An August 24, 2018 email from Hartleib to Judge Watson raising "concerns over Weiser's billing practices in a prior case." (Id. ¶ 184(b).)

*Memorandum, Doc. #151, p. 22-23.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced memorandum (Doc. No. 151) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. <u>It is solely admitted that the Court identified Statement Nos. 9 and 11 as actionable and not privileged.</u>**

92. The Court found that Statements No. 9 and 11 were not subject to judicial privilege and had been sufficiently pled to survive Hartleib's Motion to Dismiss. *Memorandum, Doc. #151, p. 22-23.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced memorandum (Doc. No. 151) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. <u>It is solely admitted that this Honorable Court ruled that Statement Nos. 9 and 11 were not protected by the judicial privilege.</u>**

93. Hartleib then filed an Answer to the First Amended Complaint raising Affirmative Defenses, including the privileges previously raised in his Motion to Dismiss. *See Answer to Amended Complaint, Doc. #166, p. 34.*

**RESPONSE:  Admitted in part; denied in part. The paragraph contains a conclusion and/or recitation of law, to which no substantive response is required; to the extent deemed otherwise, the paragraph is denied. The paragraph is further denied insofar as the referenced "Answer to Amended Complaint" (Doc. No. 166) is a writing, the content of which speaks for itself; any characterization thereof or averment which contradicts the content of that writing is specifically denied. It is further denied that any of the defenses raised in the aforementioned answer are of any merit. <u>It is solely admitted that Hartleib filed an Answer to the operative complaint.</u>**

## PLAINTIFFS' ADDITIONAL FACTS
## WHICH PRECLUDE ENTRY OF SUMMARY JUDGEMENT[2]

### Statement No. 9

1.      Jill Boren is the clerk of Judge Vano referenced relative to the Sprint Derivative Litigation. [Hartleib Dep. Day 1, 216:23-24].

2.      This Court previously determined that the judicial privilege does not protect the statements made by Hartleib to Jill Boren, Judge Vano, and the attorneys copied on the email attached to the FAC as Exhibit 28 ("Statement No. 9"). [Doc. 150, p. 22].

3.      No evidence of record has been adduced to support the allegations made by Hartleib in Statement No. 9 are true and, in fact, Christopher Nelson has testified the same are false. [Nelson Dep., 38:19-39:8].

4.      Hartleib testified relative to Statement No. 9 and confirmed that at the time it was transmitted that there were no motions pending or rulings expected from Judge Vano at the time Statement No. 9 was transmitted. [Hartleib Dep. Day 1, 309:6-8].

5.      Hartleib has admitted that the statements made in Statement No. 9 were not made relative to any relief or ruling that Hartleib was seeking from Judge Vano**.** [*Id.* at 309:20-310:10].

6.      Indeed, Hartleib testified his purpose for sending Statement No. 9 was to "inform [Judge Vano] of the ongoing issues with this [(referring to the Law Firm)] and other firms."). [*Id.* at 308:18-22].

7.      Hartleib admits that the only matter that could possibly be construed as pending before Judge Vano at the time the email referenced as Statement No. 9 was transmitted was the "oversight of the [Sprint Derivative] settlement." [*Id.*, 308:23-309:1].

---

[2] Terms capitalized herein but not otherwise defined shall have the meaning ascribed to them in Plaintiffs' contemporaneously filed memorandum of law opposing the pending MSJ.

8.      Concerning Statement No. 9 and Hartleib's prior defamatory statements, Robert Weiser ("Weiser") testified "no one cared about Silow to begin with. Because your client's cockamamie theory that, you know, I knew about Silow and I was in with him -- in with it in some kind of conspiracy because, you know, I wanted to hire a disbarred lawyer and I'd pay him less money. You know, no one else, the one thing I will say, in one else ever believed that, this idea that we were party to some conspiracy with Jeff Silow. That did not fly, that did not harm my reputation." [Weiser Dep. Day 1, 28:1-10.].

9.      Relative to Statement No. 9, Weiser also testified, "… e-mails or communications like this harm my reputation in the plaintiff's bar, make people not want to do business with me and in this specific instance of CenturyLink, meant that we didn't receive any work on the case." [Weiser Dep. Day 2, 297:12-16]. Weiser also testified, "that's a situation where we would ordinarily move to be appointed co or Lead Counsel and instead we agreed to support a structure; thereby taking a back seat, thereby earning less money…Like we've actively avoided either filing in Federal Court or moving to be appointed lead in Federal Court." [*Id.* at 291:13-292:1-2].

10.     The memorandum attached to the Motion as Exhibit X does not attribute any of the purported conduct contained in Statement No. 9 to Plaintiffs. [Motion, Ex. X].

11.     Relative to Statement No. 9, Hartleib testified the same to refer to "[t]he elaborate scheme that was used to extract information form unassuming, unsuspecting persons that work for the large pharma companies that were baited inter interviews under the guise of helping seniors and people on Medicare obtain their medications more promptly and without less hoops to jump through." [Hartleib Dep. Day 1, 304:6-13].

12.     However, when asked for his basis of this belief and basis of Statement No. 9, Hartleib deferred to the DOJ filings which reference only NHCA Group, not Plaintiffs. [*Id.* at

302:3-10 ("I investigated what was alleged in this letter. It wasn't a lot of content, like a small paragraph, small font, like ten maybe, and found the Department of Justice motion to dismiss, and, then, them outing all of these Qui TAM cases, which corresponded to what the anonymous letter said.")].

13.    Misunderstanding the procedural concepts relative to *qui tam* litigation, Hartleib testified: "The problem that we have here with regard to lawyer-driven litigation is it appears as though with the cases we're referring to, to your clients, there was no relator. The relator was the very entity that the law firms created." [*Id.* at 303:12-17].

14.    Hartleib indicated the same was based on his "research" but did not elaborate and only indicated that it would be "forthcoming." [*Id.* at 302:20-22].

15.    Still further, Hartleib ignores that those cases in Statement No. 9 were not dismissed because of the alleged apparatus employed by NHCA that Hartleib characterized as "sinister" and attributed only to Plaintiffs but, rather, because the government asserted an "unfettered right" to dismiss qui *tam* suits because the relator sues on behalf of the United States Government and that the Government concluded the expense in investigating an apparatus it ultimately deemed useful as unwarranted. (Motion, Ex. X).

16.    The DOJ Motion reads: "***NHCA Group*** utilizes a database of resumes […] to identify "potential informants" to then "… contact[] these individuals under the guise of conducting a "qualitative research study" to then "… use[] [the] information under false pretenses to prepare qui tam complaints filed by its shell company relators." [Motion, p. 13-14] (emphasis added).

17.    Relative to *qui tam* litigation, Weiser testified contrary to Defendant's misguided understanding, including generally that "shell corporations were setup … to preserve client

confidentiality [which] happens as a matter of course in Qui Tam and whistleblower litigation."

[Weiser Dep. Day 2, 303:2-5].

18.     Further, Weiser explained that "[t]here is no such thing as lawyer driven Qui Tam

case … [because] if it is public in Qui Tam, by its very definition, you can't blow the whistle on

public information. … You can't get paid. The plaintiff can't get paid. The attorneys can't get paid.

So if you are talking about any type of whistleblower, it is generated by the actual whistleblower's

knowledge, not based on some set of facts that's in the public domain that people are either looking

at and paying attention to or maybe not. **It literally comes from the client**." [*Id.*, at 303-305]

(emphasis added).

19.     Further, Christopher Nelson, the attorney most knowledgeable regarding the Law

Firm's *qui tam* litigation practice, flatly rejected the defamatory statements in Statement No. 9 as

false. [Nelson Dep., 38:19-39:8].

## Statement No. 11

20.     Regarding Statement No. 11, Weiser testified, "I would put that in the category of

your client causing problems for us in public with other lawyers, other counsel, federal judges and,

you know, I reiterate my overall outrage from last week where, you know, again, it is like the

world I am in is small. I may well see Judge Watson again. So clearly the record speak for itself.

And Judge Watson didn't seem overly concerned or moved by your client's note. On the other

hand, maybe I apply to be Lead Counsel in front of Judge Watson this year, why deal with my

trouble [(referring to the baggage of Hartlieb's defamatory filings and communications)]." [Weiser

Dep. Day 2, 330:12-22].

21.    Defendant is not and has never been a shareholder of Big Lots. [Hartleib Dep. Day 1, 317:8-13("Q. Are you or were you a shareholder of Big Lots? A. No. Q. Were you ever a shareholder of Big Lots? A. No.")].

22.    Relative to Statement No. 11, Defendant testified:

My intent was to provide information that the judge may or may not deem relevant to his determination as to the fairness of fees, appointment of lead counsel, any of those things, so this had to do with fees.

**Given what had transpired in Kansas, I deemed it prudent to inform the judge as to what took place. At that time, I didn't know who was involved in the case and <u>who billed</u>.**

[Hartleib Dep. Day 1, 320:24-321:10 (emphasis added)].

23.    This Court previously took judicial notice of the fact that there were 30 attorneys whose appearances were entered in the Big Lots Litigation and therefore would have received Statement No. 11. [Doc. No. 150, p. 28, fn. 10].

24.    This Honorable Court held in ruling on Defendants 12(b)(6) Motion that "[t]he fact that so many attorneys learned such professionally damming information would unquestionably harm Plaintiffs' reputation in the legal community." [*Id.*, p. 29].

**<u>Other Important Facts and Testimony</u>**

25.    Weiser further testified "[E]very once in a while Mr. Hartleib will come up if I have a conversation with somebody. **<u>And I can't remember the last time anyone mentioned Jeff Silow</u>**." [*Id.*, 32:19-23 (emphasis added)].

26.    Defendant specifically admitted to either calling, being called, or being referred to someone at the Wall Street Journal prior to the publication of the article referenced in the Motion and providing information for same. [Hartleib Dep. Day 1, 206-213].

27.     Absent from the WSJ Article is any indication that Plaintiffs *knew* of Jeffrey Silow's true identity during his time as a contract attorney for the firm. Assuming *arguendo* that the WSJ Article damaged Plaintiffs' reputations, that damage is distinct from that cased by Statement Nos. 9 and 11, *e.g.*, a "sinister" "elaborate scheme by Weiser … to procure "Relators" in Qui Tam cases[,]" "corruption" on the part of Plaintiffs, knowingly using a disbarred attorney to inflate billable hours, *etc.* [Motion, Ex. F].

28.     Testifying regarding the WSJ Article, Weiser indicated that "I haven't seen defense counsel, you know, file a brief in court that says, you know, Judge, you should throw out the case because Weiser used this disbarred attorney eight years ago. What does happen is that we're moving to be appointed Co-Lead Counsel or we're supporting a Co-Lead Counsel or were going to settle a case and Mr. Hartleib pops up." [Weiser Dep. Day 2, 244:6-12].

29.     The attorney newsletter referenced in the Motion (the "Newsletter") makes reference only to the hours billed in the Sprint Derivative Litigation and that many were billed by a "disbarred former lawyer."

30.     The Newsletter does not say anything regarding Plaintiffs' *qui tam* litigation practice nor does it indicate, explicitly or implicitly, that Plaintiffs knew of Jeffrey Silow's true identity, *e.g.*, the Newsletter does not reference Plaintiffs as conspirators or as complicit but, rather, Silow as an "imposter."

31.     Weiser testified that, "there is a difference between the conduct [between Brett Stecker and Hartleib.] Your client was filing things in cases where a lot of situations where he had no standing. You know, he was filing things with courts in which we were representing clients. Brett was speaking to clients of the law firm. Brett wasn't going into some third party case telling a Judge that Weiser is a bad guy. It is -- it is just not the same." [Weiser Dep. Day 1, 44:4-13].

32. Testifying regarding Hartleib's defamatory statements regarding Plaintiffs' knowledge of Jeffrey Silow's true identity, Patricia Weiser stated, "when that information [(referring to Jeffrey Silow's disbarred status)] . . . gets taken out of context and then **assumptions, presumptions and conclusions are made which are unfounded, that hurts reputation**. When Mr. Hartleib goes into courts all around the country making that look like something that it is not, including that we perpetrated it, that hurts our reputation because all of that goes to the insinuation that we did something wrong, which we did not." [P. Weiser Dep., 150:10-20].

33. Plaintiffs produced to Defendant a statement of the income damages they suffered due to Defendant's defamatory Statement Nos. 9 and 11 totaling at least $7,957,500.00. [Exhibit 8].

34. Patricia Weiser testified, ""…the fact that Mr. Hartleib was involved … is what made us act and do so many things to make sure we stepped properly and – and did everything we cold to preserve and protect or reputation . . . Absent him [(referring to Hartleib)], I don't think – I think this would have gone the way of an unfortunate thing that happens, which is someone lied to us, we disclosed it." [P. Weiser Dep., 54:17-55:4].

35. Patricia Weiser also testified that Plaintiffs "backed out of fulsome careers … and fulsome caseloads … because of [Hartleib]." [P. Weiser Dep., 256:21-23].

36. Weiser specifically testified that the problem with Hartleib and the resultant damages is essentially that *you cannot know what you do not know*. [Weiser Dep. Day 2, 219:10-13 ("I mean colleagues in the bar weren't screaming to my face. It would either be a situation where a phone call isn't returned or a referral isn't made.")].

37. Weiser further testified that the Law Firm's business for 2018, 2019, and 2020 was "poor." [Weiser Dep. Day 1, 64:19-21].

38.    Weiser testified specifically to not receiving referrals from attorney Al Yates for seven years. [*Id.* at 7:6-12].

39.    Weiser specifically testified that, "in the absence of any other intervening cause or circumstance, I think your client moved the needle in a number of cases." [*Id.* at 29:22-24].

40.    Patricia Weiser testified, "[t]here were several instances where we were moving for lead counsel – or, I think, even in one that we were lead counsel, where the Court ultimately decided all things being equal, if you have this shit going on and this persons going to come into your litigation, we're going to choose someone else to be lead counsel." [P. Weiser Dep. 69:21-70:11].

41.    Weiser testified that, "there are a whole bunch of firms that I don't seem to work with anymore. And, you know, they are -- I am not getting cannon balls lobbed at my front door, people just don't return my calls or I am not part of the structure or it is more subtle than that … I mean one of his law firms wouldn't work – I mean the firm that used to represent Mr. Hartleib wouldn't -- like Kahn, Swick, you know, they won't work with me. Now they don't like me. Some of it has to do with this, some of it has to do with other things, but I mean it is usually not -- because, again, like why -- from their perspective, why should they start a war unnecessarily. In other words, if you needed some big confrontation to break apart, and that was required, that's what would be done. But nobody needs to do that. They don't call me back, I don't call them back. Everybody goes on their separate ways. There is no fight or argument. There is no blood. It is like death by a thousand cuts, it is like death by silence." [Weiser Dep. Day 1, 26:7-27:10].

42.    Patricia Weiser testified, "You can't run a business in our field where your reputation is why people want to work with you, is why clients want to hire you, when you have

all this going on [(referring to Hartleib using defamatory and false allegations to oppose the litigation efforts of the Law Firm)]. [P. Weiser Dep., 68:13-18].

43.    Patricia Weiser testified that, "It became increasingly apparent that we could not pursue derivative litigation, according to or prior business model, because we couldn't go into court seeking to be lead counsel, seeking to get control of the cases, seeking to continue to litigate cases and then resolve them and ultimately get settlements approved with Mr. Hartleib there . . . There were several instances where we were moving for lead counsel – or, I think, even in one that we were lead counsel, where the Court ultimately decided all things being equal, if you have this shit going on and this persons going to come into your litigation, we're going to choose someone else to be lead counsel" and that "he was going to be out there waiting to disparage us and our reputation publically in the Courts. [*Id.* at 68:13-18, 71:15-16].

44.    This Court noted, Hartleib's false statements of fact in Statement No. 9 are of the type that "could have irretrievably harmed Plaintiffs' standing in the legal community." [Doc. No. 150, p. 27].

45.    Patricia Weiser testified that Weiser was feeling depressed because of the toll Hartleib's defamatory actions were having on him, that he was suffering mental anguish and familial impacts, and migraines which she believed had been intensified by the stress and mental anguish of Hartleib's assaults. [P. Weiser Dep., 178:9-21, 179:15-22, 185:21-23].

46.    The mental anguish experienced by Weiser is detailed in the uncontroverted Roeder Report. [*See* Exhibit 9].

*Respectfully submitted,*

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**


By:    <u>/s/ Philip S. Rosenzweig</u>
        Philip S. Rosenzweig, Esquire
        Attorney Identification No. 62461
        prosenzweig@sanddlwayers.com
        Woodlands Center
        900 E. 8th Avenue, Suite 300
        King of Prussia, PA  19406
        (610) 263-0115
        *Attorneys for Plaintiffs*
        *The Weiser Law Firm, P.C. and*
        *Robert B. Weiser, Esquire*