**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1889
_____

THE WEISER LAW FIRM, P.C.;
ROBERT B. WEISER, Esquire,

Appellants

v.

MICHAEL HARTLEIB
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-02728)
District Judge:  Honorable Karen S. Marston
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on May 6, 2024

Before: PORTER, MONTGOMERY-REEVES and ROTH, <u>Circuit Judges</u>

(Opinion filed: December 26, 2024)


_____

OPINION[*]
_____


_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

ROTH, <u>Circuit Judge</u>

Robert Weiser and the Weiser Law Firm, P.C. filed a host of tort claims against Michael Hartleib.  In five separate orders, the District Court dismissed three of Weiser's claims for lack of personal jurisdiction and one claim for improper venue, dismissed all but two of his defamation-based claims as untimely or barred by the judicial privilege, and declined to quash third-party subpoenas for Weiser's medical records.  We will reverse the October 9, 2020 (ECF No. 36), order and affirm the four remaining orders.

## I.  Background and Procedural History

This appeal comes before us after more than a decade of acrimony between the parties.[1]  Weiser, a Pennsylvania resident, runs the Weiser Firm in Berwyn, Pennsylvania, that offers representation in shareholder class actions and derivative litigation.  Hartleib is a resident of California.  Weiser alleges that after the Weiser Firm declined to represent Hartleib in a shareholder derivative suit, Hartleib embarked on an extensive smear campaign against him and his firm.

Hartleib and Weiser first came into contact to discuss filing a shareholder derivative suit on behalf of the mobile phone service provider Sprint.  Weiser concluded that the Weiser Firm could not represent Hartleib in a derivative suit on Sprint's behalf because of Hartleib's role in a different pending securities class action against Sprint.  Weiser was also "extremely troubl[ed]" by Hartleib's proposal to share any attorneys'

---

[1] We write for the parties and therefore recite only those facts necessary to our disposition. We take as true all well-pleaded allegations in Weiser's complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

fees that the Weiser Firm might recover in the action.[2]  Weiser ultimately brought a Sprint derivative suit in Kansas state court on behalf of another plaintiff, Monica Ross-Williams.[3]  After the Sprint litigation reached a settlement, Hartleib filed an objection, which he offered to withdraw if the Weiser Firm hired him to consult on future securities litigations.  Weiser declined Hartleib's offer, and the Kansas state court approved the settlement.[4]

Things came to a head after Weiser discovered that contract attorney Jeffrey Silow, who had worked for the Weiser Firm during the Sprint litigation, had previously been disbarred in Pennsylvania.  Weiser alerted the court of the issue, but Hartleib also found out and pressed it further.  He emailed Weiser, copying eleven attorneys involved in the litigation and the administrative assistant of the Kansas state court, and accused Weiser of misleading the courts.[5]  That same day, Hartleib called Ross-Williams, "verbally harassed and threatened her," and assailed the Weiser Firm as a "criminal enterprise."[6]  Hartleib then emailed Ross-Williams, copying fifteen attorneys and the administrative assistant of the Kansas state court, and once again accused the Weiser Firm of fraud and criminal conduct.[7]  Hartleib sent similar missives both before and after the Kansas court issued a protective order barring him from contacting Ross-Williams.

---

[2] Appx Vol. 1 11.

[3] Ross-Williams is a resident of Michigan.

[4] Although the court approved the settlement, it awarded approximately ten percent of the requested attorneys' fees.  That award was affirmed on appeal.

[5] Those copied on the email included two Weiser Firm attorneys, Brett Stecker and James Ficaro, and Alfred Yates, an attorney based in Pittsburgh.

[6] Appx Vol. 1 14.

[7] Hartleib copied Weiser, Stecker, Ficaro, and Yates on this email as well.

Weiser further alleges, and Hartleib did not refute, that Hartleib provided a tip to a *Wall Street Journal* reporter, which led to a widely circulated article about Silow's disbarred status, his work in the Sprint action as a document reviewer, and the fact that the court awarded just 10 percent of the requested attorneys' fees in the Sprint settlement. Thereafter, Weiser contends that it was Hartleib who sent an anonymous, profanity-laced letter to six Chester County, Pennsylvania, judges urging disciplinary action against the Weiser Firm. The letter attached a summary of the *Wall Street Journal* article about Silow's disbarred status while working for the Weiser Firm, and the 90 percent reduction in attorneys' fees in the Sprint litigation.

Hartleib's efforts continued when he contacted Abelson Legal Search, the Philadelphia-based legal recruitment firm that had placed the disbarred attorney at the Weiser Firm, and accused Weiser and his firm of fraud. Then, hoping to prompt a criminal investigation, Hartleib made similar allegations to Detective Sergeant Thomas Goggins of the Chester County, Pennsylvania District Attorney's Office. Finally, Hartleib raised similar accusations to various courts in which Weiser had pending litigation.[8]

Weiser sued Hartleib in the District Court for the Eastern District of Pennsylvania, asserting a range of tort claims. This appeal primarily concerns three orders (ECF Nos.

---

[8] For example, Hartleib filed an amicus brief in a derivative action in the District of Minnesota in which lead counsel had moved for the Weiser Firm to be included in the litigation support structure. The court ultimately approved the proposed litigation support structure.

4

36, 151, 173) issued by the District Court in the course of that litigation.[9]  Hartleib first moved to dismiss for lack of personal jurisdiction and improper venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), and the District Court granted the motion in part.  Weiser amended the complaint, and Hartleib then moved to dismiss for failure to state a claim, which the District Court again granted in part.[10]  Finally, Hartleib served various third-party subpoenas for Weiser's medical records.  Weiser moved to quash the subpoenas, and the District Court denied his motion.  Weiser voluntarily dismissed his remaining claims with prejudice, and then appealed the District Court's orders.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.  We review de novo the District Court's dismissal of Weiser's claims for lack of personal jurisdiction,[11] failure to state a claim,[12] and improper

---

[9] Weiser also appeals two related orders (ECF Nos. 154, 181).  In the first, the court clarified that a statement made by Hartleib in the Georgia litigation could not support a defamation claim.  In the second, the court denied Weiser's motion to reconsider his motion to quash.  Our analysis of the main orders applies to these supplemental orders as well.

[10] The court dismissed Weiser's defamation-based claims to the extent they were based on fifteen allegedly defamatory statements made by Hartleib.

[11] *See Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 113 n.5 (3d Cir. 2020) ("[T]he plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction." (citation omitted)).

[12] *See Child.'s Health Def., Inc. v. Rutgers, the State Univ. of N.J.*, 93 F.4th 66, 74 (3d Cir. 2024).

venue.[13]  We review the District Court's decision not to quash a subpoena for abuse of discretion.[14]

### III.  Discussion

**A. The District Court Erred in Dismissing Weiser's Claims for Lack of Personal Jurisdiction and Improper Venue.**

Weiser appeals the October 9, 2020 (ECF No. 36), order dismissing, for lack of personal jurisdiction, his request for a vexatious litigant order and his claims for negligent misrepresentation, intentional interference with prospective contractual relations, and tortious interference with contract.[15]  He appeals the same order dismissing his abuse of process claim for improper venue.

---

[13] We apply de novo review to the dismissal of the complaint for improper venue where, as here, the court did not consider transfer of venue.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).

[14] *See Bestwall LLC v. Armstrong World Indus.*, 47 F.4th 233, 242 (3d Cir. 2022).

[15] Weiser requested the vexatious litigant order to enjoin Hartleib from filing any actions against him, making any filings or submissions in any suit that involves him, and contacting any individual or entity about him without first obtaining leave of the court.

6

### 1. Vexatious Litigant and Negligent Misrepresentation

The District Court improperly dismissed Weiser's request for a vexatious litigant order and his negligent misrepresentation claim. Pursuant to Rule 4(k) of the Federal Rules of Civil Procedure, a district court sitting in diversity "typically exercises personal jurisdiction according to the law of the state where it sits."[16] Pennsylvania's long-arm statute authorizes courts to exercise personal jurisdiction to the "fullest extent allowed by the Constitution."[17] In order for a court to exercise personal jurisdiction over an out-of-state defendant, the Due Process Clause of the Fourteenth Amendment requires that the defendant have "certain minimum contacts" with the forum state.[18]

---

[16] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *see also* Fed. R. Civ. P. 4(k)(1)(A).

[17] *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting 42 Pa. Cons. Stat. § 5322(b)).

[18] *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Weiser does not argue that the District Court has general jurisdiction over Hartleib. Therefore, the analysis turns to whether specific jurisdiction exists, which requires courts to find that (1) the defendant "'purposefully directed [its] activities' at the forum,"[19] (2) "the litigation 'arise[s] out of or relate[s] to' at least one of those activities,"[20] and (3) if the first two prongs are satisfied, "the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'"[21] Purposeful contact exists where a defendant "deliberately reache[s] into Pennsylvania to target . . . its citizens."[22] Communications sent "into the forum may count toward the minimum contacts that support jurisdiction."[23] While we have not yet adopted a specific standard for relatedness, for tort claims "a defendant's contacts with the forum need not have been the proximate cause of the plaintiff's injuries."[24] Reciprocity is central to determining if a claim arose out of a defendant's contacts with the forum, as we recognize that "[w]ith each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations."[25]

---

[19] *Id.* at 317 (alteration and omissions in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

[20] *Id.* (quoting *Helicopteros Nacionales de Colmbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

[21] *Id.* (quoting *Burger King*, 471 U.S. at 476).

[22] *Id.* at 318.

[23] *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993).

[24] *O'Connor*, 496 F.3d at 320.

[25] *Id.* at 323 (citing *Int'l Shoe,* 326 U.S. at 319).

We will first consider Weiser's request for a vexatious litigant order.  Weiser's request is premised on numerous acts attributed to Hartleib, including calling and emailing Weiser Firm client Monica Ross-Williams (which she characterized as intimidating, harassing and threatening); sending multiple emails to Weiser, attorneys involved in the Sprint litigation, and the Kansas state court; submitting amicus briefs and appearing at hearings in Weiser Firm cases across the country; and filing a malpractice lawsuit against Weiser and the Weiser Firm, even though the firm never represented Hartleib as a client.

In dismissing Weiser's request for a vexatious litigant order for lack of personal jurisdiction, the District Court concluded that several of the emails that serve as the basis for Weiser's request were not directed to Pennsylvania.  We disagree.  Four of the emails Weiser identifies are addressed to him and speak directly to him, and Weiser and at least one other Weiser Firm attorney are copied on all of the emails.[26]  Hartleib's emails to Weiser and other Pennsylvania-based attorneys did not "end up" in the state by chance; rather, Hartleib deliberately sent them into the forum.[27]

_____

[26] Hartleib copied Weiser Firm attorney Brett Stecker on nine emails he sent between March 6, 2017, and March 14, 2019.  James Ficaro, another Weiser Firm attorney, is copied on all but one of those emails.  Alfred Yates, a Pittsburgh-based attorney, is copied on five of the emails.

[27] Appx Vol. 1 27 (quoting *PPG Indus. v. Jiangsu Tie Mao Glass Co., Ltd.*, 2020 WL 1526940, at *4 (W.D. Pa. Mar. 31, 2020)).

Weiser further alleges that Hartleib purposely availed himself of the forum state by attempting to initiate a cross-complaint against the Weiser Firm, and by reaching out to a Chester County detective to express his intention to file a bar complaint and a civil action.  The District Court observed that "nothing appeared to come of" Hartleib's attempts at filing a cross-complaint; "no court filings, no new actions initiated, et cetera."[28]  The court also concluded that Hartleib's emails to the detective were unclear as to who was the target of Hartleib's planned actions.  However, in one of the emails, Hartleib explicitly writes,  "I am going to bring a civil suit against Weiser."[29]  These examples, even if Hartleib did not ultimately execute his objectives, constitute deliberate action into the forum that should be properly factored into the specific jurisdiction analysis.

The District Court also erred in failing to consider the letter sent to Chester County judges because Hartleib's affidavit stated that he did not send the letter.  Although a plaintiff is not permitted to "rely on the *bare pleadings alone* in order to withstand a defendant's Rule 12(b)(2) motion,"[30] this does not mean the plaintiff is precluded from relying on materials attached to the complaint that go beyond the mere pleadings.  Moreover, as in Weiser's case, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal

---

[28] Appx Vol. 1 29.
[29] Appx Vol. 2 1312.
[30] *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (emphasis added).

jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."[31]

The District Court afforded too much weight to Hartleib's self-serving statement that he did not write the letter, when Weiser had already provided evidence to the contrary, including the letter itself, two statements to courts in Georgia and Minnesota, and several emails drafted by Hartleib with similar style and punctuation as the anonymous letter.  Additionally, the contents of the letter are focused on the same object of Hartleib's self-expressed fixation, the Weiser Firm's hiring of Silow to work on the Sprint derivative action and the consequences of Silow's deception.  Thus, the District Court erred when it failed to consider Weiser's "competent evidence" regarding the anonymous letter to determine whether to include the letter in its personal jurisdiction analysis.[32]

Regarding Weiser's negligent misrepresentation claim, Pennsylvania's long-arm statute contains a "tort out/harm in" provision.  As a result, personal jurisdiction extends to "anyone who causes harm or tortious injury, intentionally or not, in Pennsylvania through acts or omissions outside Pennsylvania."[33]  Nonetheless, due process requires that the minimum contacts threshold be met for a negligent misrepresentation claim.

---

[31] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

[32] *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (explaining that when facing a jurisdictional challenge, a "plaintiff must 'prov[e] by affidavits *or other competent evidence* that jurisdiction is proper'") (emphasis added) (citation omitted).

[33] *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998); 42 Pa. Cons. Stat. § 5322(a)(4).

Weiser bases his claim on several communications Hartleib made outside of the forum, including a phone call and email to firm client Ross-Williams and to courts in Georgia and Ohio, where the Weiser Firm was involved in pending litigation. Weiser asserts that these communications, accusing the Weiser Firm of engaging in fraudulent billing and being a "criminal enterprise," resulted in money damages and lost opportunities for himself, as a Pennsylvania resident, and for his Pennsylvania-based business.[34]

In dismissing Weiser's negligent misrepresentation claim, the District Court concluded that Hartleib did not initiate his communications with third parties "for the specific purpose of communicating with Weiser and the Firm in Pennsylvania."[35] We disagree. Hartleib was aware that Ross-Williams was a Weiser Firm client and reached out to her *because* she was a Weiser Firm client. Further, Hartleib deliberately sent the Ross-Williams email to Weiser, two other Weiser Firm attorneys, and Pittsburgh-based attorney Alfred Yates—all parties who live and work in Pennsylvania. In the email, Hartleib explains additional intentional action into the forum, including that he has "contacted the district attorney's offices in Pennsylvania and Kansas and will be filing formal complaints" against Weiser and the Weiser Firm.[36]

Hartleib's communications to courts and individuals outside of the forum also directly relate to the communication he sent into the forum. These communications share

---

[34] Appx Vol. 2 73.

[35] Appx Vol. 1 32.

[36] Appx Vol. 2 142. There is no singular District Attorney's Office in Pennsylvania. The record reflects that Hartleib did email a Detective Sergeant at the Chester County District Attorney's Office several times expressing his desire to file a civil action against Weiser and criminal charges against Silow and his son.

a common accusation that Weiser and the Weiser Firm engaged in deception and criminal activity related to the Sprint litigation. While Hartleib may have had several reasons for initiating contact with these various third parties, all of the parties share a direct connection to the Weiser Firm. Hartleib's intent was to send a message to the Weiser Firm in Pennsylvania and impact the firm's business in Pennsylvania. Hartleib's contact with the forum is therefore sufficient to establish minimum contacts, and Weiser's negligent misrepresentation claim arose out of those contacts.

### 2. Intentional Interference with Prospective Contractual Relations and Tortious Interference with Contract

The District Court also improperly dismissed Weiser's claims for intentional interference with prospective contractual relations and tortious interference with contract. Where a plaintiff brings intentional tort claims, the *Calder* effects test applies, and the court may exercise personal jurisdiction over an out-of-state defendant if the plaintiff "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered" *and* the defendant "expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."[37]

For his intentional interference with prospective contractual relations claim, Weiser asserts that Hartleib interfered with the Weiser Firm's future partnerships with other firms involved in the same work by filing an amicus brief and appearing at an oral argument in a derivative action in the District of Minnesota to oppose the Weiser Firm's

---

[37] *Marten*, 499 F.3d at 297 (citing *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)).

inclusion in the litigation support structure.  Weiser also alleges in his supplemental brief that Hartleib sought to interfere with settlement negotiations in Pennsylvania between the Weiser Firm and Abelson when he offered to help Abelson file a cross-complaint against the firm.

To support the "brunt of the harm" prong, Weiser cites *Remick v. Manfredy*,[38] which held that where an out-of-state defendant commits tortious conduct with the intent to interfere with a contract, the plaintiff feels the brunt of the harm where his business practice is based.[39]  The District Court noted that *Remick* is distinguishable because the plaintiff there asserted in an affidavit that he performed the majority of the work under the contract in Pennsylvania, whereas Weiser provided no such testimony.  However, an affidavit is not required.  Even without an affidavit, Weiser avers "specific facts" that he is a Pennsylvania resident whose business has its sole location in Pennsylvania.[40]  Thus, he is entitled to the reasonable inference that he and the Weiser Firm felt the brunt of the harm of Hartleib's alleged actions in Pennsylvania, where Weiser works and where the Weiser Firm is based.  The same applies to Weiser's tortious interference with contract claim.

Addressing the second prong of the *Calder* test, Weiser argues that Hartleib's efforts to sabotage the Weiser Firm's business were "expressly aimed at injuring [Plaintiffs] in Pennsylvania where [they] live and work."[41]  We agree.  In one email

---

[38] 238 F.3d 248 (3d Cir. 2001).
[39] *See id.* at 260.
[40] *See Marten*, 499 F.3d at 298.
[41] Appellant's Br. 47 (quoting *Remick*, 238 F.3d at 260).

14

Weiser identifies, Hartleib twice describes his actions against the Weiser Firm as a personal "quest."[42]  In another email, Hartleib wrote that partnering with him to take legal action "could lead to the demise of the Weiser Firm."[43]  These communications underline the animus behind Hartleib's actions; that is, to put a Pennsylvania-based corporation out of business.

Similarly, for the tortious interference with contract claim, Hartleib's contact with Ross-Williams was expressly aimed at injuring Weiser, the Weiser Firm, and the forum. Hartleib contacted Ross-Williams and numerous attorneys who worked collaboratively with the Weiser Firm to state that the firm engaged in "fraudulent billing" practices and "criminal acts."[44]  In doing so, Hartleib directed his actions toward triggering consequences in the forum for Weiser and the Weiser Firm.  In sum, both prongs of the *Calder* test are satisfied for Weiser's intentional tort claims to extend personal jurisdiction over Hartleib.

### 3.  Abuse of Process

Additionally, the District Court erred when it dismissed Weiser's abuse of process claim for improper venue.  The parties agree that venue can be proper in this litigation only under 28 U.S.C. § 1391(a)(2).[45]  Section 1391(a)(2) does not require the court "to determine the 'best' forum or the forum with the most substantial events, . . . rather more

---

[42] Appx. Vol. 2 280–82.
[43] Appx Vol. 2 1307–08.
[44] Appx Vol. 1 14.
[45] That section establishes that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(a)(2).

than one federal district may be the site of substantial events or omissions and therefore more than one federal district may be a proper venue in a given case."[46] Importantly, "a court deciding venue does not [look] to a single triggering event prompting the action, but to the entire sequence of events underlying the claim."[47]

In dismissing Weiser's abuse of process claim, the District Court acknowledged the unusual facts of the case, writing: "[W]e certainly appreciate Plaintiffs' argument that Hartleib should not be permitted to gallivant across the country, inserting himself into litigations in which Plaintiffs are involved, and then be immune from being haled into court here[.]"[48] We recognize that Hartleib's alleged conduct directed at Weiser and the Weiser Firm occurred in various jurisdictions throughout the country. We are, however, persuaded by Weiser's argument that "the central axle of all of the abusive actions taken by Appellee across the country" are Weiser and the Weiser Firm, located in the Eastern District of Pennsylvania.[49] In tort actions, at least two of our sister circuits have recognized "the locus of the injury" as a relevant factor in determining substantiality of the events for proper venue.[50] Moreover, Hartleib's various filings and court

---

[46] *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999) (citation omitted).

[47] *Leone v. Cataldo*, 574 F. Supp. 2d 471, 484 (E.D. Pa. 2008) (internal quotations omitted) (quoting *Uffner v. La Reunion Francaise,* 244 F.3d 38, 42 (1st Cir. 2001)).

[48] Appx Vol. 1 47.

[49] Appellant's Reply Br. 7.

[50] *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075–76 (9th Cir. 2001) (concluding that in an action under the disclosure provision of the Fair Credit Reporting Act, "at least one of the 'harms' suffered by the Plaintiffs is akin to the tort of invasion of privacy and was felt" where plaintiffs resided in Nevada . . . . Thus, venue was proper [in Nevada]" (citing *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867–68 (2d Cir. 1992))).

appearances demonstrate that the Eastern District of Pennsylvania would not be an "unfair or inconvenient place of trial" to Hartleib, given his willingness to travel to courts outside of his California home to involve himself in Weiser Firm actions across the country.[51]

In addition, Weiser points to substantial events that occurred within the district, for example, Hartleib's email to Weiser seeking an apology and threatening that "other action is eminent!"[52] Hartleib sought involvement in the Weiser Firm's Pennsylvania-based litigation against Abelson and Silow, describing himself as a layperson who "has defeated and humiliated [the Weiser Firm], and I am far from finished."[53] Hartleib contacted a Chester County detective to inquire about filing criminal charges and expressed his plans to file a bar complaint and "civil suit against Weiser."[54] Taken collectively, Hartleib's threats and attempts to initiate legal processes in Pennsylvania constitute a "substantial part of the events . . . giving rise to the claim" of abuse of process.[55]

---

[51] *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994) (quoting *LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979)).

[52] Appx Vol. 2 63, 168.

[53] Appx Vol. 2 1305–09. Abelson did not file a cross-complaint against the Weiser Firm and the parties eventually reached a settlement.

[54] Appx Vol. 2 1310–13. The Restatement (Second) of Torts defines the general principle of abuse of process as "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977).

[55] 28 U.S.C. § 1391(a)(2).

## B. The District Court Did Not Err in Dismissing Weiser's Defamation Claims to the Extent they are Based on Untimely and Privileged Statements.

Next, Weiser argues that the District Court erred when it limited the scope of his claims for defamation, disparagement, and false light through its March 31, 2022 (ECF No. 151), and April 12, 2022 (ECF No. 154), orders. Weiser's claims are premised on seventeen statements allegedly made by Hartleib.[56] The court allowed Weiser to proceed with claims based on only two of those statements, holding that claims based on twelve of the statements are time-barred and claims based on three of the statements are barred by the judicial privilege.[57] We discern no error in that decision.

Twelve of Hartleib's statements were made more than a year before Weiser filed his claims against Hartleib and are therefore barred under Pennsylvania's one-year statute of limitations.[58] Weiser maintains that each statement was part of a continuing unlawful practice, and as a result, claims based on those statements are timely under the continuing

---

[56] Weiser maintains that he identified eighteen statements. In a clarifying order, the court explained that Weiser's complaint did not identify the "Equifax statements" as a basis for defamation claims and, in the alternative, that it would be protected by the judicial privilege. Appx Vol. 1 88.

[57] We assume the parties' familiarity with the statements referred to in this opinion. For a comprehensive accounting of those statements, *see* Memorandum on Defendant's Motion to Dismiss at 12–15, *Weiser Law Firm, P.C. v. Hartleib*, No. 2:19-cv-02728-KSM (E.D. Pa. Mar. 31, 2022), ECF No. 150.

[58] 42 Pa. Stat. Cons. Ann. § 5523(1) (providing a one-year limitations period for "[a]n action for libel, slander or invasion of privacy"); *see also Pro Golf Mfg. v. Trib. Revs. Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (applying a one-year statute of limitations to commercial disparagement claims because "the statute of limitations for slander is the same whether the slander involves property or the person").

18

violations doctrine.[59]  But that doctrine does not apply to defamation-based claims, so the court did not err in dismissing the claims based on those statements.[60]

The District Court was likewise correct to apply judicial privilege to three of Hartleib's statements.  Under Pennsylvania law, statements "issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought" cannot give rise to liability for defamation.[61]  Weiser maintains that Hartleib's statements are not protected because they do not meet either requirement.  We disagree.  Two of the statements were presented in an amicus brief to the court in the Minnesota derivative suit and were pertinent and material to that proceeding.[62]  The third statement was made to a detective for the express purpose of reporting alleged criminal acts.  The privilege undoubtedly applies to "statements made to law enforcement officials for the

---

[59] The continuing violation doctrine provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal citation omitted).

[60] *See Smith v. IMG Worldwide, Inc.*, 437 F.Supp.2d 297, 304 (E.D. Pa. 2006) ("Federal courts almost universally decline to apply the continuing tort doctrine to defamation claims.") (cleaned up).

[61] *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004) (internal emphasis omitted) (quoting *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986).

[62] Hartleib accused the firm of fraudulent billing practices and urged the district court not to approve the firm's inclusion in a litigation support structure.  The court had no prohibition on amicus briefs, and the statements were reasonably relevant to the district court's decision to allow the firm to participate in the litigation.  Weiser's statements in the Georgia-based derivative litigation are privileged for similar reasons.

purpose of persuading those officials to initiate criminal proceedings."[63]  Hartleib's

statement to the detective meets that criteria, regardless of whether he harbored any

ulterior motives when reporting Weiser's alleged criminality.[64]

## C.  The District Court Did Not Abuse its Discretion in Denying Weiser's Motion to Quash Hartleib's Third-Party Subpoenas.

Finally, Weiser argues the District Court, in its August 26, 2022 (ECF No. 173),

and September 8, 2022 (ECF No. 181), orders, erred by refusing to quash the subpoenas

Hartleib served for Weiser's medical records.  "It is a well-established principle that the

scope and conduct of discovery are within the sound discretion of the trial court."[65]  As a

result, we will not disturb a district court's discovery order unless the appellant shows

that the court abused its discretion.[66]  A party may show an abuse of discretion by

demonstrating that "the court's decision was arbitrary, fanciful or clearly

unreasonable."[67]

---

[63] *Schanne v. Addis*, 121 A.3d 942, 947–48 (Pa. 2015).  Weiser argues that statements "made with the bare possibility that a criminal proceeding might be instituted" do not fall within the scope of the privilege.  *See* Appellant's Br. 60 (quoting *Parks Miller v. Cty. of Centre*, 702 F. App'x. 69, 73 (3d Cir. 2017)).  But the non-precedential opinion that he relies on reached the more limited holding that allegedly defamatory statements made before the speaker even contemplated a criminal investigation were not protected.  *See Parks Miller*, 702 F. App'x at 73.

[64] *See Schanne*, 121 A.3d at 947–48; *Richmond v. McHale*, 35 A.3d 779, 784–85 (Pa. Super. Ct. 2012) ("[T]he existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement.  The privilege is absolute and cannot be destroyed by abuse." (citing *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576 (Pa. 1967))).

[65] *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969).

[66] *United States v. Collins*, 36 F.4th 487, 494 (3d Cir. 2022) (citing *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010)).

[67] *Id.* (quoting *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 201 (3d Cir. 2012)).

Weiser fails to make that showing.  The District Court denied Weiser's motion to quash on the ground that his medical records were relevant to his claim for intentional infliction of emotional distress.  Relevance under Federal Rule of Civil Procedure 26 is a broad standard.[68]  The court's finding that the medical records were relevant to Hartleib's defense against the claim that he caused Weiser to develop post-traumatic stress disorder, among other mental and physical ailments, was not clearly unreasonable.[69]  Furthermore, the court's September 8, 2022 (ECF No. 181), order limited the subpoenas to the extent they were overbroad and entered a protective order to guard against potential misuse of Weiser's information.  Put differently, the court did not abuse its discretion.

## IV. Conclusion

For the above reasons, we will reverse the District Court's October 9, 2020 (ECF No. 36), order and remand for further proceedings.  We will affirm the District Court's March 31, 2022 (ECF No. 151), April 12, 2022 (ECF No. 154), August 26, 2022 (ECF No. 173), and September 8, 2022 (ECF No. 181), orders.

---

[68] *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).
[69] The District Court also noted that Weiser could avoid production of his medical records if he withdrew his claim for intentional infliction of emotional distress or identified his primary care physician.